### LEE v. COMMISSIONER OF INTERNAL REVENUE.

No. 8491.

Circuit Court of Appeals, Seventh Circuit.

June 21, 1944.

Samuel E. Hirsch, Julian H. Levi, and William Ruger, all of Chicago, Ill., for petitioner.

J. P. Wenchel and John W. Smith, Bureau of Internal Revenue, both of Washington, D. C., and Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and L. W. Post, Department of Justice, all of Washington, D. C., for respondent.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

The taxpayer petitions for review of a decision of the Tax Court holding him liable for the ·income taxes assessed on the dividends received by a trustee upon certain shares of stock which constituted the corpus of its trust.

The controversy arises as the result of an arrangement whereby the owner of practically all of the stock of a corporation sought to provide by trust instrument that upon his death, the value of the stock of the corporation should enure to the benefit of his wife or daughter while the corporation itself should continue in the hands of two officers and employees who had been closely associated with himself in its man-

agement and whom he apparently considered essential to its continued success. In order to provide for their succession to his interest in the business, the settlor placed the 2149 shares of common stock which he owned (of a total of 2450 outstanding) in the hands of a trustee with directions that upon his death, two thirds should be held for the benefit of petitioner, and one third for the benefit of one Hevenor whose situation is similar to petitioner's. Hevenor has also filed petition for review of the decision of the Tax Court, which petition is being held in abeyance pending decision of this appeal.

The trust instrument further provided that Lee and Hevenor should have the right to purchase the stock held for their benefit for $60 a share, and that all dividends paid on the stock should be applied by the trustee in payment of the purchase price, less an amount equal to 5% of the unpaid balance of the purchase price compounded annually. Lee and Hevenor were given the right to pay the balance of the purchase price plus interest at any time from sources other than the dividends. The agreement also provided that upon any payments, the trustee should have transferred to Lee and Hevenor the number of shares paid for by such payments; that if the dividends were insufficient to pay the 5% interest on the unpaid balance for any three successive years, the trustee might at its option terminate the rights to purchase upon written notice, within 60 days after which Lee and Hevenor might pay the balance owing on the purchase price and interest for their respective shares of the stock, and that if they did not complete their payments within that time, all their rights in the stock not yet paid for and delivered should terminate. Either could relinquish his rights under the agreement at any time by giving written notice, and if any shares were not taken up by either, the trustee was given the power to sell, with the consent of the settlor's widow during her lifetime, and their daughter's consent after her mother's death. The agreement provided for distribution of all funds collected by the trustee thereunder, after deduction of expenses, to the settlor's widow, Mrs. Reineck, during her lifetime, and to their daughter after her mother's death.

In the years 1936, 1937 and 1938, dividends were paid on the stock amounting to $20,862, $19,759, and $32,260, all of which, less administrative expenses, was paid to Mrs. Reineck. All of the stock was delivered prior to July 1939, to Lee and Hevenor who paid in addition to the amounts credited from dividends, $46,659 and $18,749 from their own funds, respectively.

For the three years involved in this proceeding, 1936-7-8, the commissioner asserted deficiencies in the tax returns of everyone connected with the trust, Mrs. Reineck, Lee and Hevenor, and the trustee. He sought to tax Mrs. Reineck on the theory that she was the income beneficiary of the trust, the person who actually received the cash paid to the trustee as dividends on the stock. The tax against Lee and Hevenor was based on their receipt of the stock, computed upon the fair market value of those shares delivered to them during those years, which value the commissioner fixed at $140 a share for 1936, $145 for 1937, and $150 for 1938—deducting the amount paid in cash, from sources other than dividends, by each party for the shares paid for in each year. His theory was that the stock was given them as additional compensation for services rendered the corporation during the years in question. The trustee was taxed as to certain funds withheld during 1938 because of pending litigation. All four taxpayers petitioned the Board of Tax Appeals for redetermination of the deficiency. In the proceeding before the Tax Court the commissioner amended his answer to raise an alternative issue that, in the event that his action as to Lee and Hevenor were held erroneous, they should be held subject to income tax on the pro rata amounts of the gross dividends on the credit of which shares of stock were issued to them.

In analyzing the trust instrument, the Tax Court concluded that the primary purpose of the settlor was to make sure that his wife and daughter, the primary objects of his bounty, should receive the value of the stock which constituted the corpus of the trust, subject to an option in Lee and Hevenor to buy, irrevocable except for certain provisions we need not discuss. It held that when that option was exercised and the stock purchased, the proceeds, except for the 5% interest, upon which Mrs. Reineck conceded income tax liability, became corpus and were distributed as such to her. Since this was corpus, it was not income, and the court held that the commissioner erred in taxing this fund as income to Mrs. Reineck.

The court further held, in effect, that the dividends were constructively received by

Lee and Hevenor when they were applied on the purchase price of the stock segregated and held subject to their option to buy. "The option was exercised when the stock was sold by the Trust to Lee and Hevenor. This occurred when the dividends on the stock were paid to the Trust and, under its terms, were concurrently constructively distributed as trust income to Lee and Hevenor by a credit on the books of the Trust against interest and purchase price of the stock and the stock thus paid for was delivered to Lee and Hevenor. United States v. Boston & Maine Railroad, 279 U.S. 732 [49 S.Ct. 505, 73 L.Ed. 929]." In the case cited, the Court held that payment of the income taxes of a lessor pursuant to a provision of a lease obliging the lessee to pay all taxes on lessor's property or income, constituted additional income to the lessor.

We find no flaw in the analysis of the Tax Court. It seems clear that the settlor intended that his wife should have the value of his stock for her inheritance, although there was no provision for her ever to have the stock itself. Her income was to be only indirectly from the dividends of the stock, which dividends were to be applied first (after payment of administrative expenses) to the payment of 5% interest on the unpaid balance of the purchase price and then to payment of the purchase price itself. In other words, the dividends were to be used to pay a specific legacy, the amount of which was fixed by the number of shares valued at $60. Until she received this amount, she was entitled to 5% interest on it, or whatever unpaid balance remained on it. Only this 5% constituted income to her.

Petitioner contends that because the trust imposed no legal obligation on him and Hevenor to pay the $60 a share, and such payment could not have been enforced against them by the trustee, it follows that the arrangement constituted a gift to them of the stock. We think this is not strictly true. The stock was not given to them outright, under the terms of the trust agreement. It had to be paid for, either out of their own funds or out of dividends earned by the corporation. Hence, if there was a gift, it was of the dividends used to pay for those shares of stock which they did not pay for from other funds.

We may perhaps speculate upon the settlor's motives in making what petitioner describes as a gift to him as a trusted employee. The settlor may have considered that the corporation was more likely to prosper and pay dividends if these employees had the additional incentive thus furnished, so that his wife's chances of obtaining what he considered the fair value of his stock as her inheritance were greatly increased if they were given such incentive. Meantime, he provided for an income for her of 5% of the entire unpaid balance of the purchase price before they could have any dividends applied on such purchase.

The fact that petitioner could not be legally compelled to do anything does not appear significant when it is considered that the arrangement was, so to speak, self-operating,—that is to say, the trustee was bound to apply all dividends over and above those required to pay expenses and the 5% to the purchase price of the stock and deliver it over, as each share was thus released, to petitioner or Hevenor. While nothing was required of them to effectuate the plan, they did have to take affirmative action, in the form of written notice, to relinquish their rights under the instrument. Of course no one could force them to accept the shares released by credit of the dividends, but the record shows that they did accept all of them, exercising the option in full so that all shares were duly delivered over to them by July 1939. Hence the question does not arise as to what would have happened if they had not elected to accept the benefit of the dividends applied to their credit. We are convinced that the acceptance of the shares of stock paid for out of the dividends of the corporation constituted acceptance of the benefit of the dividends which were thus constructively received by petitioner and Hevenor, just as salary was held to be received by the employee whose income taxes were paid by his employer in Old Colony Trust Co. v. Com'r, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918.

Decision affirmed.