## DE GUIRE v. HIGGINS.

### No. 150, Docket 20438.

Circuit Court of Appeals, Second Circuit.
Feb. 11, 1947.

Samuel Rudykoff and John F. X. McGohey, U. S. Atty., both of New York City, for appellant.

John P. McGrath, of New York City (Denis M. Hurley, of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The Collector appeals from a judgment against him in an action to recover income taxes unlawfully collected from the plaintiff's testator. The question is whether the

Commissioner properly assessed certain dividends on shares as income to DeGuire, the testator, when he received them, or whether they must be treated merely as decreasing the "basis" of a capital gain when the shares should be eventually sold. The facts were stipulated and, so far as they are important, are as follows. DeGuire, Mrs. Moore, Bosworth, Lee and Ludlow were together the owners of all the shares of the Ajax Hand Brake Company—10,000 in all. DeGuire and Mrs. Moore each owned 4000, and the other 2000 were divided among Bosworth, Lee and Ludlow. On December 31, 1935, Mrs. Moore, Bosworth and DeGuire entered into a contract by which Mrs. Moore and Bosworth agreed to sell their shares to DeGuire. (Lee had already agreed to sell his on the 2nd of December.) The terms agreed to between Mrs. Moore and DeGuire may be taken to apply to the other two. They were as follows. DeGuire paid in cash $43,904 of the total price of $96,000 at the execution of the contract, and executed four promissory notes, all dated December 31, 1935: one for $17,365, payable on December 31, 1936; two for $8,682 each, payable on December 31, 1937; and the fourth for $17,367, payable on December 31, 1938. All were also payable earlier at the maker's option, and interest ran at five per cent per annum, payable semi-annually. Mrs. Moore agreed to attach a certificate for 1332 shares to the first note, a certificate for 667 shares to each of the second and third notes, and a certificate for 1334 shares to the fourth note: all endorsed in blank. The parties were to deposit the notes with the certificates attached in escrow in a bank which was instructed to deliver them as follows. Upon DeGuire's delivery of a certified cheque for the principal of any note, together with any interest accrued from the last interest date, and a receipt for the payment of all earlier interest, the bank should deliver to him the certificate to which that note was attached. In case DeGuire failed to pay the principal and accrued interest on any note when the principal became due, the bank was to deliver that note back to him and the certificate attached to it to Mrs. Moore. Until DeGuire had paid the notes payable on December 31, 1936 and half of those payable

on December 31, 1937, two of the directors of the company should be nominated by Mrs. Moore and Bosworth and one by De-Guire. Thereafter Mrs. Moore and Bosworth would vote for such persons as director as DeGuire should nominate. The capital stock was not to be increased; Mrs. Moore and Bosworth were to be entitled to vote upon their certificates while the bank held them; but until all the notes were paid no dividend should be declared unless DeGuire approved. No officer should have a salary, and DeGuire should name them all. The contract concluded with the following clauses. "All dividends which may be paid, during the life of this agreement, * * * shall be credited by the recipient thereof upon the principal and interest of the next one of the said notes thereafter to become due. It is understood and agreed that" DeGuire "shall not be personally liable under this agreement or otherwise or upon any of said notes, and that the only remedy of" Mrs. Moore "in the event of the failure of" DeGuire "to pay any of said notes and accruing interest thereon, shall be the right to the re-delivery of the certificate or certificates of stock attached thereto."

The company declared a dividend of seven per cent on December first, 1936, payable on the 15th, and on that day executed a cheque to the order of Mrs. Moore for $28,000—the dividend on 4000 shares. This cheque was delivered to DeGuire, Mrs. Moore endorsed it in blank, and DeGuire delivered it to the bank. With the proceeds he instructed the bank to pay the note, due December 31, 1936, and one of the two notes, due on December 31, 1937, and to apply the balance—$1953—towards the payment of the other note, due December 31, 1937. The bank thereupon delivered to him the certificate of 1332 shares attached to the note of December 31, 1936, and the certificate of 667 shares attached to that one of the notes of December 31, 1937, which had been paid. In December of 1937 the company declared a dividend of twelve per cent on the shares, and a cheque was issued to Mrs. Moore for $24,012, upon the 2001 shares remaining in her name; this cheque she endorsed and DeGuire delivered it to the bank. This left unpaid only the

interest and a small sum on the principal which DeGuire paid, and upon which the bank delivered to him the two remaining certificates for 2001 shares. The Commissioner decided that DeGuire had received the dividends in 1936 and 1937 as ordinary income, and taxed him accordingly. DeGuire insisted that they were to be treated as reductions of the purchase price and should be suspended until he sold the shares, when the effect of them would be to diminish his "basis" below $96,000. DeGuire paid the tax as assessed, and the judge held that his interpretation of the transaction had been right, and ordered judgment for the plaintiff.

■ When the same issue was before the Seventh Circuit on review of the assessment of Mrs. Moore on the same dividends,[1] the majority of that court held that Mrs. Moore should not be taxed upon the dividends, because DeGuire had had all the substantial incidents of ownership of the shares since December 31, 1935, notwithstanding the condition that, if he defaulted in the payment of the notes as they fell due, both the shares and the dividends, reverted to Mrs. Moore. Judge Evans dissented, because DeGuire had only an option on the shares when the dividends became payable, and an optionee has no title until he decides to take the property. All three judges thought that the case turned upon whether DeGuire became the owner from the outset. We find it unnecessary to pass upon that point, because, as it seems to us, the dividends were properly regarded as part of DeGuire's income during 1936 and 1937, even though he did not become in any sense the owner of the shares except as he exercised his options in those years. We shall therefore for argument assume that the plaintiff's construction of the contract is right: it is this. Although DeGuire had paid nearly half the purchase price in 1935, he had not promised to pay the balance, for it was expressly agreed that if he defaulted upon any one of the notes, the bank should return it to him. Therefore, although it was true that he would in that event lose that proportion of the purchase price of the attached shares which he had paid, large as that was, that was the limit; and if some calamity were to overtake the company, so that it paid no dividends in 1936, 1937 and 1938, and the price of the shares went to ten or less, he would have been free to abandon the purchase. The fact that instead of this the company had two years of such extreme prosperity that the dividends themselves were enough to pay substantially the whole balance of purchase price, should not, the plaintiff argues, disguise the legal nature of the transaction; which was a naked option at an uncertain price to be determined in part by the prosperity of the company in the next three years. Further, since the dividends when declared were credited upon the purchase price, they could not be ordinary income to DeGuire, for he had no right to use them otherwise. The agreed and nominal price was not the real price; to learn the real price one must subtract them from the nominal price.

■ We cannot agree. The dividends were earnings upon the shares and were inexorably someone's income; they were taxable as income either to DeGuire or to Mrs. Moore. All that the contract effected was to suspend their ultimate ownership for a time after they had become income; and while that did indeed make it impossible to decide whose income they were, that was its only effect. It could not change their character that they were provisionally impounded for the security of both parties until DeGuire decided whether to take up his options; they were in no different position from the dividend cheques, if these had not been cashed but merely attached to the notes like the certificates. It follows that as to those dividends whose final disposition was determined in the same year in which they were declared, the period of uncertainty was irrelevant. This covered all the dividend of 1937, which was declared upon those 2001 shares which DeGuire took up in that year; for it became ascertainable in that year that that dividend was his income and it was properly included in his income for that year. The same is also true, and for the same reason, of that part of the 1936 dividend which was attributable to the 1999 shares which DeGuire took up in 1936:

---

[1] Moore v. Commissioner of Internal Revenue, 7 Cir., 124 F.2d 991.

$13,993. The situation is not so plain, however, as to that part of the 1936 dividend which was attributable to the 2001 shares: $14,007; for, though it too was credited upon the notes in 1936, it can hardly have become definitively DeGuire's in that year. If he had failed to take up those shares in 1937 or 1938, he would have been accountable for that part of the dividend to Mrs. Moore at least, that seems to us the most natural meaning of the contract. Incidentally it is also the meaning most helpful to the plaintiff in this action, because, if the contract be construed as meaning that De-Guire was in 1936 irrevocably entitled to the entire 1936 dividend, even though he did not take up the other notes, the part attributable to the 2001 shares becomes indistinguishable from the part attributable to the 1999 shares. If he had only this conditional right in the part attributable to the 2001 shares, it might appear that it should not have been included in his income until 1937, when it became unconditionally his. Even so, that would not change the result, because this is an action for money had, and the plaintiff could not recover without showing that the defendant was withholding money which is justly hers.[2] This she could not do, for if the Commissioner had included in DeGuire's 1937 income the part of the 1936 dividend attributable to the 2001 shares, the inclusion would have increased his tax for that year by more than the exclusion of the same amount would have reduced it for 1936.

This would be a complete answer to the action, except for a circumstance which we have not as yet mentioned, and which was this. The Commissioner did not assess the deficiency against DeGuire for 1936 until August 14, 1942, which was more than five years after March 15, 1937, when DeGuire had filed his return. On January 30, 1942, DeGuire extended the time to assess until June 30, 1943, but the statutory time to assess a deficiency—three years—had already expired,[3] unless it was saved by that section of the statute[4] which provided that the time within which to assess a deficiency should be five years in cases where a taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of the gross income stated in the return." In 1936 De-Guire returned gross income of $137,683.47, twenty-five per cent of which is $34,420.87. The 1936 dividend on Mrs. Moore's shares was $28,000, as has appeared, and upon Bosworth's shares was $6895: $34,895 in all. Hence, unless all of the 1936 dividends should have been included in DeGuire's return no deficiency whatever could be assessed in 1936. Hence it becomes necessary to decide whether the condition, attaching to so much of the 1936 dividend as was attributable of the 2001 shares, made it necessary to postpone the inclusion of that item in DeGuire's income until 1937.

■■ The courts have several times had occasion to consider in what year a conditional payment shall be included in the payee's income. If he has received it under a claim of right, though he may have to account for it to another in a later year, he must include it in the year in which he receives it and be content with a deduction, if later he is forced to return it.[5] This rule is to be distinguished from that which governs when it remains undetermined throughout the year whether the payment is income at all. For example, the holder of an option may make a payment which he will forfeit if he fails to complete the purchase, and the payment will then become income of the payee. On the other hand, if he does complete the purchase, the payment will become part of the "amount realized" in an equation of capital gain of the payee—then a seller. In such a case the payment does not become income of the payee in the year

[2] Stone v. White, 301 U.S. 532, 57 S. Ct. 851, 81 L.Ed. 1265.

[3] § 275(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 275(a).

[4] § 275(c) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 275(c).

[5] North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L. Ed. 1197; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Blum v. Helvering, 64 App.D.C. 78, 74 F.2d 482; Hull v. Commissioner of Internal Revenue, 4 Cir., 87 F.2d 260; Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122; Jacobs v. Hoey, 2 Cir., 136 F.2d 954.

when it is received.[6] Since the dividends at bar were income in any case, by using the whole 1936 dividend to pay his notes, DeGuire claimed it as his own in 1936, and was properly taxable for it in that year. The plaintiff also argues that in any event the whole of the dividend was not properly part of DeGuire's "gross income," but only the difference between it and the interest which he paid upon the notes in that year. This would reduce the omitted income to less than twenty-five percent of that returned; but the argument is so transparently untenable that we shall not discuss it.

Judgment reversed; complaint dismissed.

CLARK, Circuit Judge (concurring).

Without necessarily disagreeing with my brother's reasoning, I had felt that we might dispose of the case more simply and without becoming involved in doctrines of relating back, setoff, etc. As the opinion states, the payments must certainly be income to one or the other of the parties; why not to that one who has the greater number of attributes of ownership? Here the analogy of ownership to a "bundle" of rights is useful; who has the more, Mrs. Moore or DeGuire? And for tax purposes, we should look to practicalities, disregarding merely formal and not useful rights and piercing such general abstractions as "option." Comparing beneficial rights, as well as powers and privileges, of the two, it seems to me we cannot avoid the conclusion that DeGuire has many more as to the stock than has Mrs. Moore. This was in substance the view of the majority in the Seventh Circuit. Moore v. Commissioner of Internal Revenue, 7 Cir., 124 F.2d 991; in fact it has been reiterated by the entire court in a case on all fours, Lee v. Commissioner of Internal Revenue, 7 Cir., 143 F.2d 4. In view of Judge Minton's opinion in the Moore case I need not enumerate the details of DeGuire's rights, but may content myself by saying in summary that by virtue of his purchase, and until and unless he chose to throw away the large payment he had made, he substantially controlled not merely the stock, but the corporation itself, its officers, directors, and policies.

[6] Virginia Iron Coal & Coke Co. v. Commissioner of Internal Revenue, 4 Cir., 99 F.2d 919; Hunter v. Commissioner of Internal Revenue, 5 Cir., 140 F.2d 954.