## NORTHERN TRUST CO. OF CHICAGO v. UNITED STATES.

### No. 47.

United States District Court
N. D. Illinois. E. D.

Oct. 11, 1950.

Clarence F. Martin, Chicago, Ill., for the plaintiff.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for the defendant.

SULLIVAN, District Judge.

This is an action brought for the refund of income taxes for the calendar year 1936.

The question presented is whether a dividend paid upon corporate stock purchased under an installment payment agreement, providing that pending final payment any dividend paid should be applied as a part of the purchase price, is taxable to the purchaser under Section 22(a) of the Revenue Act of 1936, 26 U.S.C.A. § 22(a), when title to the stock remained in the seller pending final payment.

On and prior to August 10, 1936, Edward Gomoll was the owner of 25 shares of capital stock of Standard Paste and Glue Co., an Illinois corporation with a total outstanding stock of 50 shares. Edith Rennert was administratrix of the estate of her husband, Charles Henry Rennert, and in such representative capacity was the owner of the remaining 25 shares of the stock.

On August 10, 1936, Edith Rennert and Edward Gomoll entered into a written agreement whereby Edith Rennert agreed to sell her 25 shares to Gomoll for $25,000 payable in installments at the stated intervals. Simultaneously with the initial payment the buyer was required under the agreement to deposit the installment note with the Chicago Title & Trust Company, as escrowee, and concurrently therewith the seller was required to deposit with the escrowee the stock certificate, endorsed in blank by the seller. The deposits were made under an escrow agreement required by the agreement of sale. The agreement also provided that title to the stock was not vested in the buyer until payment had

been made in full. Paragraph numbered "5" of the agreement is as follows (Stip. Ex. A): "5. All dividends paid on the capital stock of the Standard Paste & Glue Company, Inc., evidenced by certificate No. 6, until the payment in full of the entire purchase price hereunder, shall be paid over to the First Party on account of the next installment or installments either of principal or of interest of payments of the purchase price which may be due or may become due under the terms hereof, the payment of which dividends shall be endorsed upon the note deposited in escrow by the Second Party and reduce the obligation of the Second Party hereunder pro tanto."

On December 15, 1936, Standard Paste & Glue Company declared a dividend of $300 a share, which had been earned by the corporation prior to August 10, 1936, the date of the agreement, and which amounted to $7500 and was paid by check. The check was cashed by the escrowee and the proceeds were paid to Edith Rennert in accordance with the terms of the agreement of August 10, 1936, and the escrow agreement.

On or about March 14, 1937, Edward Gomoll and Aleta M. Gomoll filed their joint individual income tax return for the calendar year 1936 and paid the amount of taxes shown to be due thereon. Thereafter, the United States asserted a deficiency in the taxes of Edward Gomoll and Aleta M. Gomoll for the year 1936. Thereafter, Edward Gomoll died and the United States reasserted the deficiency against Aleta M. Gomoll and the estate of Edward Gomoll. On or about June 30, 1942, the executor of the estate of Edward Gomoll and Aleta M. Gomoll paid the asserted deficiency of $1,668.29.

The deficiency was based upon the claim that the dividend of $7500 on the stock of the Standard Paste & Glue Company, which stood in the name of Edith Rennert, constituted income to Edward and Aleta M. Gomoll for the taxable year 1936 and that no income tax had been paid thereon by them.

On June 27, 1944, a claim for the refund of the amount of $1,668.29 was filed by Aleta M. Gomoll and was disallowed May 17, 1946.

The basic point underlying the entire controversy is the claim of the plaintiff that the tax in question should not have been assessed or collected from Edward Gomoll because the dividend on the stock of Standard Paste & Glue Co. was not income to Edward Gomoll.

The plaintiff contends that unless and until the government can demonstrate that Edward Gomoll had a taxable income, it cannot legally retain the tax exacted from him. In other words, if Edward Gomoll did not gain from the transaction here involved, then he cannot be said to have had an income which is taxable under the Federal laws.

The government claims that Gomoll was liable for a tax because he was benefited by the payment of the dividend on the stock of Standard Paste & Glue Co., which was then held in escrow. Since it appears from the stipulated facts that Edward Gomoll did not receive the proceeds of this dividend, the claim that Edward Gomoll is liable is necessarily bottomed on the principle of forgiveness of indebtedness, in other words, the dividend was used to pay his debt.

It is plaintiff's position that although this principle is well recognized by the courts, it cannot sustain the government's contentions because one of the essential elements is missing. This missing element is the sine qua non of any tax on income, namely, that there must be an income, a profit, a gain. A forgiveness of indebtedness without a corresponding gain does not result in a tax.

Plaintiff contends that Edward Gomoll did not profit one cent from the payment of the dividend. He contracted to buy all of the stock of Standard Paste & Glue Co., not already owned by him, 25 shares, at a price of $25,000. This price of $1,000 per share was fixed after Mrs. Rennert caused an audit of the books of the company to be made by her auditor, and the result disclosed that the real value of each share was $1,000. Mrs. Rennert then offered either to buy Edward Gomoll's stock at $1,000 per share or to sell him her stock

at that price, and she gave him his choice of either buying or selling. Gomoll elected to buy, and in the written contract between the parties, Mrs. Rennert protected herself by specifying that she would not give up the title of the stock until it was paid for in full. The language of the agreement is as follows (par. 4, of Exhibit "A" attached to the stipulation): "The title of said shares of stock owned by the first party and evidenced by Certificate No. 6 shall vest in second party only upon payment in full of the whole of the purchase price and interest thereon, as herein provided."

In other words, the seller made it clear and definite that she was taking no chances and was retaining title to her property until she had been paid for it in full.

Since any diminution of the corporate assets would reduce the value of the stock, a provision was made in the written agreement (par. 5, of Exhibit "A") that although dividends paid on the escrowed stock would go to the seller (as they must, since she retained the title to the stock) the buyer would receive credit on his notes given for the purchase price, for the full amount of the dividend.

When the dividend was declared in the amount of $300 per share there was paid out of the corporate assets $300 for every share of stock, including the 25 shares in escrow, which were then standing on the books of the corporation in the name of Edith Rennert. Since this was the stock that Edward Gomoll had contracted to buy, the assets behind each share of stock declined in value when the dividend was paid. Because this result had been anticipated by the parties, Gomoll was then, by the terms of the agreement, obliged to pay a lesser sum for the stock, namely, $700 per share, or a total of $17,500. In other words, Gomoll agreed to pay $1,000 per share for the 25 shares of stock provided there was no diminution of the value before title passed to him. As there was a diminution of value before the title passed to him, he was obligated to pay Mrs. Rennert only the lesser price, determined by subtracting the dividend paid from the maximum price of $1,000 per share.

Before the payment of the dividend Edward Gomoll was obliged to pay $1,000 per share and he was entitled to receive stock that was backed by real assets worth $1,000 per share. After the dividend was declared and paid Gomoll was obliged to pay only $700 per share, but the stock he received was worth only that amount. It is true that the dividend was paid out of profits, but the stipulation also recites that those profits were earned prior to August 10, 1936, the date of the written agreement.

In other words, the profits from which the dividend was paid, were earned before Gomoll contracted to buy the stock. They were part of the corporate assets which he contracted to receive. When Gomoll agreed to buy the stock at $1,000 per share the profits had already accrued to the corporation, and they increased the value of each share of stock. When Edith Rennert had her auditors go over the company books, these profits swelled the value of each share of stock enough to bring that value up to $1,000 per share.

Plaintiff asserts that under the circumstances he was not obligated to pay any income tax as a result of the dividend in question. "Income tax law relates only to realized gains, and no income accrues unless there is gain or profit." Drier v. Helvering, 63 App.D.C. 283, 72 F.2d 76.

The case of Hextell v. Huston, Collector, D.C., 28 F.Supp. 521, involved the purchase of a farm and the giving of a $10,000 mortgage as part of the purchase price. Some years after this transaction the value of the farm had decreased from $20,000 (the original purchase price) to $6,500. The purchaser of the farm settled the $10,000 mortgage for $6,500, and the Collector of Internal Revenue attempted to exact a tax on the theory that the purchaser had realized a gain of $3,500 by purchasing his own obligation at that discount. The court refused to recognize as valid the government's argument and found that the taxpayer was not liable for the tax. At page 523 of 28 F.Supp. the court said: "While not free from difficulty, I find as a matter of law that in the transaction in 1935 there was a determined loss to the taxpayer equal to his gain, by the purchase of his ob-

ligation at less than its face value and that the plaintiff is entitled to recover * * *."

In the case of Dallas Transfer & Terminal Warehouse Co. v. Commissioner of Internal Revenue, 5 Cir., 70 F.2d 95, the taxpayer settled back rent for a consideration less than the full amount owed. Despite that fact the court held that no taxable income arose and said at page 96 of 70 F.2d: "Gain or profit is essential to the existence of taxable income."

The case of Hirsch v. Commissioner of Internal Revenue, 7 Cir., 115 F.2d 656, was one in which the taxpayer purchased real estate in 1928 at a price of $29,000, paid $10,000 in cash and assumed a mortgage of $19,000. In 1936, the balance due on the mortgage was $15,000 but the land had declined in value and was worth only $8,000 at that time. The mortgage was released upon the payment of $8,000 at that time, by the taxpayer. The court held that the transaction did not result in taxable income. At page 658 of 115 F.2d the court said: "True, this was a forgiveness of indebtedness, but, more than that, it was in its essence a reduction in purchase price from $29,000 to $22,000. As the facts stand petitioner has paid $22,000 for certain property which he still owns and he is, therefore, unable to determine whether he has had a gain or a loss."

On page 6 of its brief the government says: "the buyer received the benefit of the dividend and, therefore, it was income to him."

■ The existence or non-existence of a "Benefit" to Gomoll is the gist of the entire case. It is apparent that Gomoll did not benefit by the declaration and payment of the dividend. A benefit (for tax purposes) is a profit or a gain, and Gomoll enjoyed no profit or gain by reason of the payment of the dividend. Therefore no tax should be assessed against him.

The second reason urged by the government, in support of its claim that Gomoll was liable for the tax, is that the title to the stock passed to Gomoll when the escrow was first formed.

■ The reason the government claims that Gomoll was the owner of the stock when the dividend was declared, is that it recognizes the rule that a dividend is taxable to the person who owns the stock when the dividend is declared and paid.

Section 18(1) of Chapter 121½ of the Illinois Revised Statutes reads as follows: "Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred."

The written agreement of the parties in this case (Exhibit "A" attached to Stipulation) in par. 4, says, in part: "The title to the said shares of stock owned by first party and evidenced by Certificate No. 6 shall vest in second party only upon payment in full of the whole of the purchase price and interest thereon as herein provided, etc."

■ Such provision leaves no doubt as to the clear intention of the parties. The parties intended to postpone the passage of title until the entire purchase price was fully paid. The title did not pass until after the dividend was declared and paid. Since, at the time the dividend was declared and paid, the stock was in the name of Edith Rennert on the books of the company and the certificate itself was in the hands of the escrowee and was not delivered to Edward Gomoll until after the dividend had been paid, it is evident that the title to the stock did not pass to Edward Gomoll at the time the escrow was formed.

In its brief the government cites three cases all of which are distinguishable on the facts from the case at bar.

In the case of Moore v. Commissioner of Internal Revenue, 124 F.2d 991, plaintiff pointed out in its brief that the 7th Circuit CCA found the title to the stock had passed to the purchaser when the escrow was first formed, and decided the case on that basis.

In the Moore case the principle "forgiveness of indebtedness" was not applied because under the facts of that case Moore was not personally liable for the purchase

price and therefore was not indebted to the seller of the stock. In the case at bar Gomoll was personally obligated.

In the Moore case the court found that the seller of the stock did not receive the dividend as a dividend because the title had passed from her to the purchaser when the escrow was first formed. In the case at bar, since the government concedes that the title had not passed from the seller when the dividend was declared and paid, the conclusion is inescapable that the seller did receive the dividend as a dividend.

In the Moore case and also in DeGuire v. Higgins, 2 Cir., 159 F.2d 921, both of which arose out of the same transaction, the profits paid out in the form of dividends were earned during the time the stock was in escrow, and represented an increase in the value of the stock which occurred after the buyer had contracted to purchase.

It is my conclusion that the plaintiff is entitled to a judgment in the amount indicated in the stipulation of facts for the following reasons:

1. Where there is no gain or profit, there can be no income tax. A forgiveness of indebtedness without a corresponding gain does not result in a tax. Edward Gomoll did not benefit by the declaration and payment of the dividend, therefore it was not income and no tax should be assessed against him or his estate.

2. By the terms of the written agreement between the parties the title to the stock did not pass to Edward Gomoll until after the dividend was declared and paid.