247 F.2d 206
 57-2 USTC P 9813
 Clarence W. MILLER and Emma L. Miller, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Raymond S. MILLER and Josephine Miller, Respondents.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Frank NOWATZKI and Lillian Nowatzki, Respondents.
 Nos. 11956-11958.
 United States Court of Appeals Seventh Circuit.
 July 9, 1957, Rehearing Denied Sept. 20, 1957.
 
 Howard R. Slater, Chicago, Ill,, for Clarence W. and Emma L. Miller.
 Clarence R. Serb, Chicago, Ill., for Raymond S. and Josephine Miller and Frank and Lillian Nowatzki.
 Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, Atty., Tax Division, U.S. Dept. of Justice, Washington, D.C., Ellis N. Slack, Hilbert P. Zarky, Melvin L. Lebow, Attys., Dept. of Justice, for Commissioner of Internal Revenue.
 Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 These multiple appeals arise out of a decision of the tax court, reported as Miller v. Commissioner, 1956, 26 T.C. 151, holding the dividends involved taxable as ordinary income to the seller of the stock of Tiny Tot Safety Table Company, an Illinois Corporation. Deficiencies in income taxes for the year 1950 are involved. That the dividend was taxable to the seller was the chief contention of the Commissioner who, as he asserts through his brief, 'being charged with the duty of collecting the revenue is occasionally required to take inconsistent positions in order to conform to his duty. The present consolidated proceeding presents such a problem. The Commission believes the Tax Court was correct and would not have appealed in the case of the buyers had not the seller filed a petition for review.' In short, we are told this 'dividend was inexorably income to someone,' Accordingly, the Commissioner filed a protective appeal against the buyers Raymond S. Miller, Josephine Miller, Frank Nowatzki, Lillian Nowatzki when Clarence W. and Emma Miller took their appeals. The Tax Court had sustained the Commissioner's determination of deficiencies against the seller Clarence W. and his wife, Emma Miller, and reversed the Commissioner's action against the buyer, Raymond S. and his wife, Josephine Miller and the other buyer, Frank and Lillian Nowatzki, his wife.
 
 
 2
 Documentary evidence forms all of the record in this case and since the written agreement between seller and buyer, the corporate resolution and the marginal notation in the minute book are each fully reprinted in the Tax Court's opinion, it is unnecessary to again reproduce them. The short of it is in the Tax Court's view of the exhibits, that the seller was the person in possession of the legal title, to the corporate stock, and held beneficial ownership of the shares at the time of the dividends.
 
 
 3
 The seller owned 45,500 shares of 46,700 shares of the issued and outstanding capital stock of Tiny Tot Table Company, and he also owned the patent rights to manufacture, use, and sell Tiny Tot Safety Tables and accessories. On July 29, 1950, the seller contracted with buyers for the sale of the stock and patent rights not theretofore assigned to the corporation. On that same day, July 29, 1950, the directors of Tiny Tot, upon written waiver of notice, held a special meeting for the purpose of considering the sales agreement and declaration of dividends. This meeting was held and the directors, in substance, declared a dividend of 58cents per share on the 46,700 shares payable August 4, 1950 to stockholders of record on July 28, 1950. By their notation on the last page of that resolution, the buyers approved the action.
 
 
 4
 Later, on August 4, 1950, the seller made a written assignment of his shares to the buyers. The seller received the declared dividends through two checks dated August 7, 1950 in the amounts of $7,623.97 and $18,766.03. In his 1950 tax return, filed jointly with his wife, the seller reported a net long-term capital gain from the sale of his stock which was disallowed by the Commissioner who treated the amount of dividend as ordinary income. On the other hand when the buyers filed their 1950 returns, jointly with their respective wives, they omitted the dividends which precipitated the Commissioner's notice of deficiency and inclusion of one-half of the dividends in the incomes of each buyer.
 
 
 5
 Normally income derived from property is attributable to the owner of the income producing item, for income tax purposes. We think consistency of decision in the federal tax field is indispensable for taxpayers and their advisers who need to predict the tax consequences of their transactions. Yet what frequently appears, on cursory examination, as a sport among tax-case precedent is actually a permutation spawned by the peculiar facts of some particular case. to be sure, lurking in the volumes of reports there are, often, some bizarre results arising out of judicial struggles for an opinion based on the choice of the taxable person from among several engaged in the transactional shift of income-producing property. The case now before us is a striking example of an instance where viewpoint and emphasis of this or that fact could change the result for, as we have said, the decision pivots on the meaning extracted from several documents.
 
 
 6
 Reduced to its lowest terms the essential facts, expose this problem: B and C, together, executed a sales contract with A to buy from A his shares of stock in T Corporation. The agreement provided for redelivery and reassignment of those shares to A as collateral security for the purchase price payable by B and C. Later on the same day when the contract was signed, T corporation declared a cash dividend payable to stockholders of record on the day preceding. Shortly afterward A formally assigned his stock to B and C, which action was followed by delivery of T corporation's dividend checks to A. Which of the parties A or B and C, received these dividends as ordinary taxable income? Section 22(a), Internal Revenue Code of 1939, 26 U.S.C. 22 (1952).
 
 
 7
 According to the Tax Court the incidence of this tax fell upon A and we disagree. Only by reading and interpreting the documentary exhibits, and giving the words their natural meaning, can the choice of the taxable person or persons be made in this case. Beyond dispute B and C were obligated to pay A the purchase price for which they had committed themselves. Each of them (Nowatzki and Miller) approved the decaration of dividends and thereby claimed its benefit. That these dividends were used to reduce the unpaid portion of the purchase price is hardly a forlorn possibility, indeed A's prompt assignment to B and C is consistent with that view we take of the relevant documents. At least we have an objective fact, i.e., payment of dividends to A and his assignment signment of stock to B and C. Lee v. Commissioner, 7 Cir., 1944, 143 F.2d 4. Otherwise the case would be resolved on subjective considerations obscured by the tense of verbs in the contract of sale. We think the buyers are taxable on these dividends because, in the last analysis they were applied on the purchase price. De Guire v. Higgins, 2 Cir., 1947, 159 F.2d 921, 925. On course what we have just held collides with this passage in the Tax Court's opinion:
 
 
 8
 '* * * here the seller himself made a formal assignment of the shares to the buyers 6 days after the agreement was executed and the dividend declared. The most plausible inference to be drawn from this, we think, is that the seller had ownership and control of the shares when the dividend was declared; this being so, the dividend that was declared payable to him (as record owner of the shares on July 28, 1950) and that was actually paid to him, should probably be included in his income in the year received.
 
 
 9
 'The fact that the parties in one part of their agreement included the dividend as part of the purchase price of the shares does not necessarily alter the tax consequences of its payment. In another part of the agreement it was provided that the dividend in question was to be paid to the seller and was to 'apply on or reduce said sale price (of the stock) in such amount.' This, we think, is the essence of the transaction: The corporation had a substantial earned surplus accumulation at the time; such surplus was available to the then stockholder (the seller); a dividend from the surplus was declared on the same day that the agreement to sell was entered into and while the seller was still in control of the corporation; this dividend was specifically made payable to stockholders of record the day before the date of the agreement (again, the seller); and the dividend was so paid, and according to the agreement, the amount of the dividend reduced the sale price of the stock. On these facts, the dividend was the seller's and was properly taxable to him.'
 
 
 10
 After all A was holding the shares as collateral pending payment of the purchase price. The timing of voting the dividends is equivocal. We are not brushing aside the resolution's clear provision for payment of dividends to stockholders on the day before the dividend was declared but reading it along with the marginal notation of approval by the buyers (B and C). If they were utter strangers to the ownership of this stock we perceive no sound reason for having them acquiesce on the dividend resolution.
 
 
 11
 Our earlier decisions, Moore v. Commissioner, 7 Cir., 1941, 124 F. 991, and Northern Trust Co. of Chicago v. United States, 7 Cir., 1952, 193 F.2d 127, are consistent with the result we have reached in this appeal. See also: Rev.Rul. 560153, 1956-1 Cum.Bull. 166, following out the capital asset concept for a vendor of stock on which dividends are declared. Because Hulbert v. Commissioner, 7 Cir., 1955, 227 F.2d 399, cited to us by the government, involves a partnership we need not further distinguish it.
 
 
 12
 We hold these dividends were not ordinary income to the seller but were as to the buyers. Accordingly we reverse the appeals of: Raymond S. Miller and Josephine Miller (No. 11957), and Frank Nowatzki and Lillian Nowatzki (No. 11958) and reinstate the Commissioner's determination of deficiencies against them.
 
 
 13
 We further hold that Clarence W. and Emma L. Miller received the dividends as part of the proceeds of sale with a consequent capital gain and on this phase of the opinion brought here for review the tax court decision is also reversed.
 
 
 14
 DUFFY, Chief Judge (dissenting).
 
 
 15
 The dividend in question was declared payable to stockholders of record as of July 28, 1950. Although the agreement is cast in the present tense, an examination of the contract as a whole in view of the surrounding circumstances, convinces me the parties did not intend a present sale.
 
 
 16
 There was no transfer of legal title to the shares at the time of the agreement. There was no delivery of the shares, constructive or otherwise, to the buyers. There was no transfer of the shares on the books of the company. During the critical period the seller not only retained title to the stock, but possessed full and complete beneficial ownership. I would affirm the decision of the Tax Court.