PERCY A. REITZ AND HAZEL A. REITZ, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8412–71. Filed January 9, 1974.

*Henry Schwartz II* for the petitioners.
*W. John Howard, Jr.*, for the respondent.

### OPINION

TIETJENS, *Judge*: The Commissioner determined the following deficiencies in petitioners' income taxes:

| Taxable year | Deficiency |
| --- | --- |
| 1968 | $13,533.54 |
| 1969 | 1,160.34 |

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below.

Certain concessions have been made and the only question remaining for decision is whether a distribution in 1968 should be treated as ordinary income resulting from a dividend as defined by section 316 [1] or as the capital gains resulting from a sale, redemption, or partial liquidation.

Percy A. Reitz (hereafter Percy) and Hazel A. Reitz, are husband and wife whose legal residence is and, at all times material hereto, has been Pittsburg, Camp County, Tex. Petitioners timely filed joint income tax returns for the calendar years 1968 and 1969 with the Internal Revenue Service Center at Austin, Tex.

The Pittsburg Medical & Surgical Hospital, Inc. (hereafter Hospital), was organized under the laws of the State of Texas on or about April 23, 1940, by J. H. Mitchell, R. Y. Lacy, R. L. Johnson, and Percy with an authorized capital of $4,000 divided into 40 shares of common stock of a par value of $100 each. The organizers were all subscribers to 10 shares each of the capital stock and comprised the initial board of directors of Hospital. On or about May 13, 1944, Hospital increased its authorized capital from $4,000 to $20,000 and issued an additional 160 shares of common stock of a par value of $100 to each of its original

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.

subscribers for an additional subscription of $4,000, respectively. During the ensuing years, Mitchell, Lacy, and Johnson died. In 1965, petitioners and their two children, Robert Rex Reitz and Sharon Sue Reitz, acquired all the outstanding shares of stock in Hospital in their names. On September 27, 1965, the R. L. Johnson Estate transferred 1 share of stock to each of petitioners' children. On September 27, 1965, the petitioners transferred 49 shares to each of the children which resulted in petitioners retaining 100 shares in their names and each of the children holding 50 shares in his name. On September 30, 1968, the 100 shares held by the children of the petitioners were transferred to the petitioners to facilitate their dealing with Camp County (hereafter the County) and the City of Pittsburg, Tex. (hereafter the City). This transfer by the children to the petitioners was intended for this purpose only. No gift was intended, and no gift tax return was filed.

Sometime prior to October 31, 1968, Percy made proposals to the Commissioner's Court of the County and to the city council. Those proposals are reflected in the following memoranda, taken from the files of an attorney representing Percy at that time:

DR. P. A. REITZ PROPOSES TO THE COMMISSIONER'S COURT OF CAMP COUNTY, TEXAS:

1. That the Pittsburg Medical & Surgical Hospital declare a dividend to the present stockholders of all of the cash on hand and deposits in Banks, and all accounts for services rendered to the last day of October, or of November.

2. After the declaration of the above dividend and the transfer and payment of same, he will transfer all of the capital stock of said corporation to Camp County, Texas. The corporation owns a 42 bed hospital, the land on which it is located, all equipment, supplies and inventory of food, drugs, medicines and supplies, free of any debt whatever. Such transfer to be a GIFT to Camp County, Texas, by Dr. and Mrs. P. A. Reitz.

3. Dr. Reitz will pay all bills outstanding that accrue for purchases prior to said transfer of the property.

4. That Camp County agree that all collections made by said Hospital for services rendered prior to said transfer be paid to Dr. Reitz upon collection.

5. That Camp County agree that it will operate, or have operated, said Hospital in the future for the convenience of Camp County citizens.

DR. P. A. REITZ PROPOSES TO THE CITY COUNCIL OF THE CITY OF PITTSBURG, TEXAS:

1. That the Pittsburg Medical & Surgical Hospital, Inc., declare a dividend to the present stockholders of all of the cash on hand and deposits in Banks, and all accounts for services rendered to the last day of October or of November, 1968.

2. After the declaration of the abovementioned dividend and the transfer and payment of same, he will transfer all of the capital stock of said corporation to the City of Pittsburg, Texas. The corporation owns a 42 bed hospital, the lands on which it is situated, all equipment, all inventory of supplies, drugs, and medicines, free of any debt whatsoever. Such transfer to be a GIFT to the City of Pittsburg, Texas by Dr. and Mrs. P. A. Reitz.

3. Dr. Reitz will pay all bills outstanding that accrue for purchases made prior to said transfer of the capital stock.

4. That the City of Pittsburg, Texas, agree that all collections made by said corporation for services rendered prior to said transfer be paid to Dr. Reitz upon collection.

5. That said City of Pittsburg, Texas, agree that it will operate, or have same operated, said Hospital in the future for the use and convenience of the Citizens of this locality.

On November 25, 1968, the Camp County-City of Pittsburg, Tex., Hospital Board (hereafter the board) was created by contemporaneous resolutions of the County and the City, in accordance with article 4494i-1, Tex. Rev. Civ. Stat., to constitute a joint agency of the County and the City for the purpose of accepting petitioners' gift of stock in accordance with Percy's proposals.

On November 30, 1968, in a special meeting of the stockholders of Hospital, a dividend was declared consisting of all cash on hand, petty cash, cash on deposit in banks, and all accounts receivable for services rendered prior to December 1, 1968. All accounts payable for purchases delivered, including accrued payroll through November 30, 1968, were to be paid out of the dividend. Distribution was made to petitioners as follows:

| | |
|---|---:|
| Cash | $34, 625. 19 |
| Accounts receivable | 33, 299. 85 |
| Medicare receivable | 19, 949. 59 |
| Total | 87, 874. 63 |

In a letter dated November 30, 1968, Percy notified the Commissioner's Court, the city council, and the board that as of December 1, 1968, he and his wife were transferring all of the capital stock of Hospital to the three governmental agencies "as per * * * [his] letter of submission of gift presented to both the County and City." The letter continued:

I agree to pay all accounts for purchases delivered prior to December 1, 1968 by said Hospital that are now unpaid and may be submitted at a later date.

You are to pay to me as and when collected all accounts for hospital services rendered prior to December 1, 1968; said accounts have been distributed as a dividend by said Hospital Corporation prior to the transfer of all of the Corporate Stock to you.

The authorized representatives of the County, the City, and the board acknowledged their acceptance of the transfer.

On December 1, 1968, the 200 shares of stock of Hospital recorded in the names of the petitioners on the stock record book were transferred to the board, and a stock certificate, Number 26, was issued to the board. On December 1, 1968, the fair market value of the property represented by the shares transferred to the board was $306,122. Petitioners' basis in the 100 shares owned and transferred by them was $10,000.

On March 27, 1969, Hospital executed and the board, as sole stockholder, voluntarily consented to articles of dissolution. On April 2, 1969, a certificate of dissolution of Hospital was issued by the office of the secretary of state of Texas.

Petitioners reported the distribution of $87,874.63 as long-term capital gain resulting from a "Sale of M&S Hosp. Stock" on their 1968 joint Federal income tax return. The Commissioner determined that the distribution was taxable as dividend income and not as capital gains.

Petitioners admit that the distribution would represent a dividend as defined by section 316 if petitioners had not given the stock to the board on the day following the declaration and payment of that dividend. But petitioners assert that the gift to the board and the dissolution of Hospital 4 months after the gift require us to conclude that the distribution to petitioners was not in substance a dividend.

Petitioners cite numerous cases supporting the proposition that the substance of a transaction rather than its form controls its tax treatment and the corollary proposition that an integrated transaction may not be separated into its components for the purpose of taxation. See *Redwing Carriers, Inc.* v. *Tomlinson*, 399 F. 2d 652 (C.A. 5, 1968), and the cases cited therein. Also see *Hans P. Kraus*, 59 T.C. 681 (1973), on appeal (C.A. 2, May 18, 1973), and *Yoc Heating Corp.*, 61 T.C. 168 (1973).

We accept the doctrine that the substance of a transaction governs its taxation. However, as the Fifth Circuit stated in *United States* v. *General Geophysical Co.*, 296 F.2d 86, 87 (1961) :

The solution of hard tax cases requires something more than the easy generalization that the substance rather than the form of a transaction is determinative of its tax effect, since in numerous situations the form by which a transaction is effected does influence or control its tax consequences.

Sometime in 1968, petitioner proposed a "gift" to the City and County of all the *stock* in Hospital. In his proposal, petitioner stated that Hospital would "declare a dividend" to the stockholders before they made the gift. In accordance with this proposal, Hospital declared the dividend on November 30, 1968, and petitioners transferred their stock to the board on December 1, 1968.

We believe that the form of the distribution reflected its substance. See, for example, *Carrington* v. *Commissioner*, 476 F. 2d 704 (C.A. 5, 1973), affirming a Memorandum Opinion of this Court; *Sheppard* v. *United States*, 361 F. 2d 972 (Ct. Cl. 1966). In effect, petitioners intended to make their gift only after a distribution had removed certain assets from Hospital. Under section 316, that distribution was a divi-

dend in substance as well as in form.[2] *Merrill C. Gilmore*, 25 T.C. 1321 (1956); *T. J. Coffey, Jr.*, 14 T.C. 1410 (1950).

Petitioners argue that, in substance, the distribution was payment by the board for the stock and was entitled to capital gains treatment as the "purchase price" for the stock. The facts prohibit such an analysis. The transfer was consistently referred to as a "gift," and the distribution was referred to as a "dividend." There is no evidence whatsoever of bilateral negotiations to determine a sale price. Percy proposed the terms of the gift and the City and County created the board to accept Percy's proposal.

Petitioners admit that there was "no sale, as such, formally negotiated," but argue that the transfer was contingent on the distribution and that the board had to replace operating funds removed by the distribution. Petitioners assert that, because of this replacement of funds, the board indirectly "paid" for the stock. But petitioners cannot convince us that the transaction was bilateral and have not attempted to show, as their analysis seems to require, what portion of the funds removed the board was obligated to replace. In short, the record contains no evidence which would allow us to accept petitioners' assertion that the distribution should be treated as the purchase price of the stock.

Petitioners rely on *Casner* v. *Commissioner*, 450 F. 2d 379 (C.A. 5, 1971), reversing a Memorandum Opinion of this Court. *Casner* is one of the more recent cases in a line which has its origin in concepts of beneficial ownership under contracts of sale. See *Waterman Steamship Corporation* v. *Commissioner*, 430 F. 2d 1185 (C.A. 5, 1970), reversing 50 T.C. 650 (1968), certiorari denied 401 U.S. 939 (1971), and *Steel Improvement & Forge Co.* v. *Commissioner*, 314 F. 2d 96 (C.A. 6, 1963), reversing 36 T.C. 265 (1961), both of which were relied upon in *Casner*, and *Moore* v. *Commissioner*, 124 F. 2d 991 (C.A. 7, 1941), reversing on this issue 42 B.T.A. 949 (1940); *DeGuire* v. *Higgins*, 159 F. 2d 921 (C.A. 2, 1947), certiorari denied 331 U.S. 858 (1947), *Miller* v. *Commissioner*, 247 F. 2d 206 (C.A. 7, 1957), reversing 26 T.C. 151 (1956), certiorari denied 355 U.S. 939 (1958), rehearing denied 356 U.S. 915 (1958), *Rupe Investment Corporation* v. *Commissioner*, 266 F. 2d 624 (C.A. 5, 1959), affirming 30 T.C. 240 (1958), *Frithiof T. Christensen*, 33 T.C. 500 (1959), and *Sam E. Wilson, Jr.*, 27 T.C. 976 (1957), affirmed per curiam 255 F. 2d 702 (C.A. 5, 1958), all of which were relied upon by *Steel Improvement & Forge Co., supra*.

Petitioners entered into no binding contract of sale which would allow us to attribute beneficial ownership of the stock to the board on the day the dividend was declared. See *Moore* v. *Commissioner, supra;*

---

[2] We assume that Hospital had sufficient earnings and profits to allow "dividend" treatment under sec. 316 since neither party considers earnings and profits an issue in this case.

*DeGuire* v. *Higgins, supra; Frithiof T. Christensen, supra; Pacific Coast Music Jobbers, Inc.* v. *Commissioner*, 457 F. 2d 1165 (C.A. 5, 1972), affirming 55 T.C. 866 (1971). The record contains no evidence that the board participated in the decision to declare a dividend. See *Miller* v. *Commissioner, supra.* Finally, we cannot find any contract of sale expressly or impliedly treating the dividend as a part of a sale. See *Steel Improvement & Forge Co.* v. *Commissioner, supra*, and *Rupe Investment Corporation* v. *Commissioner, supra.*

In *Casner*, the Fifth Circuit held that (450 F. 2d at 397–398) certain "cash distributions to * * * selling stockholders constituted in fact a part of the purchase price paid to them for their shares," and that (450 F. 2d at 399) the purchasers were the beneficial owners of the stock. The Fifth Circuit reached its conclusion using the following analysis of the facts (450 F. 2d at 397) :

The cash distribution or so-called dividend was but one transitory step in the total prearranged plan to accomplish the sale of the stock by the selling stockholders and the purchase of such stock by the buying stockholders. As one step in the multi-step plan for the sale of the stock owned by the selling stockholders to the buying stockholders, it was the function of the cash distribution or so-called dividend from the paid-in capital surplus accounts of the two corporations made to the stockholders to decrease the book value of the stock and give to the buying stockholders [who owned stock before the sale] more cash which they agreed as a part of the multi-step plan to use to purchase the selling stockholders' stock. Without such step, no sale could have been accomplished for it was anticipated that the buying stockholders would not have available sufficient cash to meet the conditions for sale established by Casner requiring as much cash as possible in exchange for his stock.

Petitioners and the City and County did not negotiate a sale. Petitioners alone had beneficial ownership when the dividend was declared and paid. We see no reason to believe that the board would have given petitioners cash if Hospital had declared a smaller dividend. The record does not indicate that the book value of Hospital played any role in petitioners' gift. For these reasons, *Casner* and the cases it relies on are not applicable.

Alternatively, petitioners argue that the transaction should be treated as a redemption of a portion of petitioners' stock and a gift of the remaining shares to the board. Citing *Zenz* v. *Quinlivan*, 213 F. 2d 914·(C.A. 6, 1954), and *Arthur D. McDonald*, 52 T.C. 82 (1969), petitioners argue that treating the transaction as a redemption would result in capital gains rather than ordinary income. However, we cannot consider the transaction a redemption. Hospital did not redeem petitioners' stock, and the fully stipulated record does not contain evidence that any party to the transaction ever contemplated a redemption.[3]

---

[3] We need not consider whether an actual redemption would have entitled petitioners to capital gains treatment under sec. 302.

Petitioners suggest that we should treat the distribution as a partial liquidation under section 346 and allow capital gains treatment in accordance with section 331. We cannot accept this approach. Section 346 requires distributions "in redemption" of stock. The liquidating dividend was paid to the board, not to the petitioners. Finally, we see no relationship between, and, accordingly, no "plan" encompassing, the dividend and ultimate liquidation of Hospital.

Perhaps petitioners could have fashioned the transaction as a sale, a redemption and gift, or a liquidation and gift. Instead they arranged a dividend followed by a gift. Of course, petitioners were entitled to choose the most favorable arrangement. *Gregory* v. *Helvering*, 293 U.S. 465, 469 (1935); *Carrington* v. *Commissioner*, 476 F. 2d 704 (C.A. 5, 1973). But having chosen the method they did for accomplishing their goals, petitioners are bound by their choice. *Freeman* v. *Commissioner*, 303 F. 2d 580 (C.A. 8, 1962), affirming 36 T.C. 779 (1961). Our decision must be "made upon the basis of what was actually done rather than upon what might have been done." *Television Industries, Inc.*, 32 T.C. 1297, 1302 (1959), affd. 284 F. 2d 322 (C.A. 2, 1960). See also *John M. Rogers*, 44 T.C. 126, 136 (1965). As the Fifth Circuit said in *Woodruff* v. *Commissioner*, 131 F. 2d 429, 430 (C.A. 5, 1942), affirming 46 B.T.A. 727 (1942):

> It is true that the tax consequences of a transaction depend upon the substance of the transaction rather than the mechanics by which it is executed; but it is also true that, if a taxpayer has two legal methods by which he may attain a desired result, the method pursued is determinative for tax purposes without regard to the fact that different tax results would have attached if the alternative procedure had been followed. [Fns. omitted.]

Accordingly, we hold that the distribution was a dividend as defined by section 316.

*Decision will be entered under Rule 155.*