PAT N. FAHEY AND LELA M. FAHEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27145. Promulgated January 18, 1951.

*Pat N. Fahey,* pro se.
*John P. Higgins, Esq.,* for the respondent.

Black, *Judge:* We have but one issue in this proceeding and that is whether the net amount which petitioner received by virtue of his purchasing a one-third interest in one-half of James R. Parkerson's interest in a contingent fee contracted for in the litigation of *Barbour* v. *Barbour* pending in the United States District Court for the Southern District of Texas was all taxable as ordinary income, as the Commissioner has determined, or was taxable as capital gain and only 50 per cent thereof to be taken into income, as petitioners have treated it in their income tax return and still contend in the brief which they have filed.

The applicable statute is printed in the margin.[1]

For the purpose of deciding the only issue which we have here to decide we will assume, without deciding, that the interest which petitioner purchased in 1942 in the Parkerson contingent fee was a capital asset within the meaning of section 117 (a) (1), I. R. C. However, even assuming that fact, petitioner cannot prevail. What he received in 1945 by reason of his ownership of part of the Parkerson fee was not received as a result of a sale or exchange of his interest in the fee; it was merely a collection of his interest in the fee. Petitioner seems to be under the impression that because he purchased his interest in the Parkerson fee, then anything which he collected in excess of the purchase price would be capital gain. This erroneous impression of petitioner is clearly indicated from the following quotation from his brief, wherein he says: "Now since the rights or benefits under Parkerson's sale or assignment of December 1942 was a capital asset and was sold to him and his associates, the gain which accrued to petitioner Fahey was a capital gain."

Petitioner seems to overlook that provision in section 117 (a) (4) which says: "The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months." It is true, of course, that petitioner had owned and held his interest in the Parkerson fee for a period of more than 6 months, but in collecting it he did not sell or exchange anything. If, prior to the

---

[1] INTERNAL REVENUE CODE.

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) Definitions.—As used in this chapter—

(1) Capital assets.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), * * *

* * * * * *

(4) Long-term capital gain.—The term "long-term capital gain" means gain from the *sale or exchange* of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing net income; [Emphasis added.]

compromise in 1945 of the Barbour litigation, petitioner had sold or exchanged his interest in the Parkerson fee, then there might have been some force in his contention that his gain from the sale or exchange of his interest in such contingent fee would be taxable as capital gain. But what happened was this: In 1945, the Barbour litigation was brought to an end by a compromise between the parties and as a result of the compromise, the lawyers received $42,000 as contingent fees. Of this amount, $21,000 was paid to Taliaferro and Graves for their legal services in the litigation. Petitioner received no part of that $21,000 because he had rendered no services in the litigation and it had been agreed beforehand that he would not take part in the suit and would not receive any part of his firm's fees for legal services rendered in the litigation. Of the remaining $21,000, $10,500 was paid to Parkerson as the original lawyer in the case and the other $10,500 was paid over to Taliaferro, Graves and Fahey, not because of any legal services which they had rendered in the litigation, but because of a purchase for $800 which they had made in 1942 of one-half of Parkerson's interest in the contingent fee. Of this latter $10,500, petitioner received the amount which is here in question.

As we have already pointed out, he received his part of this $10,500, not as a result of any sale or exchange of his interest in the Parkerson fee but as a collection or settlement of it. That sort of a situation does not bring the gain which he realized as a result of the collection which he made within the capital gains provision of section 117, I. R. C. See *Hale* v. *Helvering*, 85 Fed. (2d) 819, affirming 32 B. T. A. 356. In the *Hale* case there was a compromise of notes for less than face value and the taxpayer claimed there was a sale or exchange of the notes within the meaning of the capital gains provision of the statute. In deciding the issue against the taxpayer, we said:

* * * The petitioners did not sell or exchange the mortgage notes, and consequently an essential condition expressly required by the statute has not been met and no capital loss has been suffered. Cf. *Mont S. Echols*, 24 B. T. A. 1127; aff'd., 61 Fed. (2d) 191; *John H. Watson, Jr.*, 27 B. T. A. 463. * * *

The Court in affirming our decision held that there was no sale or exchange of the notes and in so holding, the Court said:

* * * There was no acquisition of property by the debtor, no transfer of property to him. Neither business men nor lawyers call the compromise of a note a sale to the maker. In point of law and in legal parlance property in the notes as capital assets was extinguished, not sold. In business parlance the transaction was a settlement and the notes were turned over to the maker, not sold to him. * * *

We think the rationale of *Hale* v. *Helvering, supra*, is controlling here and on this issue we hold against petitioners. Cf. *Fairbanks* v. *United States*, 306 U. S. 436.

*Decision will be entered for the respondent.*