Mrs. Leonie G. **MAYER** and Mrs. Leonie G. Mayer, Executrix, (Substituted Plaintiff), Appellants,

v.

Charles A. **DONNELLY**, Collector of Internal Revenue, Appellee.

No. 16463.

United States Court of Appeals Fifth Circuit.

Aug. 13, 1957.

Charles D. Marshall, New Orleans, La., for appellants.

Walter Akerman, Jr., Lee A. Jackson, Melva M. Graney, Attys., Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Prim B. Smith, Jr., Asst. U. S. Atty., New Orleans, La., Ellis N. Slack, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., M. Hepburn Many, U. S. Atty., New Orleans, La., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

6. Sec. 34–250, G.S.Kan.1949.

RIVES, Circuit Judge.

Augustus F. (Gus) Mayer and his wife, Mrs. Leonie G. Mayer, filed separate income tax returns for the year 1943, reporting as capital gains the profit which, according to them, they had received from the sale of their stock in Gus Mayer Co., Ltd. Additional income taxes were assessed against them on the theory that certain items were not capital gains, but constituted dividends distributed to the taxpayers. The taxpayers paid under protest the increased assessments and, in due course, sued in the district court for refund.

In the district court, the parties stipulated that:

"1. The sole issue is the following: Whether the following items or any of them, received by the taxpayers, should be treated as capital gains or as dividends:

| | | |
|---|---|---:|
| "(a) | check of Gus Mayer Co., Limited No. 1635, dated May 1, 1943, payable to Gus Mayer, in the amount of | $221,547.25 |
| "(b) | U. S. Bonds, Series G | 25,000.00 |
| "(c) | 100 shares of Molybdenum stock | 4,775.00 |
| "(d) | check of Weiss Bros., dated May 1, 1943, payable to Gus Mayer, in the amount of | 104,496.92 |
| "(e) | account receivable for furniture and fixtures—Memphis | 800.00 |
| "(f) | note receivable of Burke-Andrews, Inc. for fixtures—Birmingham | 2,400.00 |
| "(g) | cash value of policy No. 4,707,402, issued by Mutual Life Insurance Company of New York on life of Augustus F. Mayer | 15,014.19 |
| "(h) | cash value of policy No. 4,707,403, issued by Mutual Life Insurance Company of New York on life of Augustus F. Mayer | 15,009.72" |

The facts are substantially undisputed, the differences lying only in the legal conclusions to be drawn from the facts.

Augustus F. Mayer was the founder and sole stockholder of Gus Mayer Co., Ltd., which was organized under the laws of Louisiana on January 17, 1900. While the stock was in the name of the husband, it was a part of the Louisiana community of acquets and gains which existed between husband and wife. The principal business of the corporation was the operation of a retail store on Canal Street in New Orleans, Louisiana. The business prospered and the authorized capital stock was increased from $25,000 to $500,000 before 1943. Prior to that year, Mayer became desirous of disposing of the business. In several discussions with his attorney, he was advised to sell only the stock of his corporation; that, otherwise, accumulated earnings might be consumed in taxes.

Beginning in 1941, Weiss Brothers, a partnership composed of Meyar Weiss and his two brothers, leased from Gus Mayer Co., Ltd., and operated the ready-to-wear department in the Canal Street store. On April 14, 1943, Augustus F. Mayer entered into an agreement with Weiss Brothers for the sale of the entire stock of Gus Mayer Co., Ltd., as follows:

"1. The Seller and his wife own all of the stock of Gus Mayer Co., Limited, a Louisiana corporation, which they have agreed to sell to the Buyer and which the Buyer hereby agrees to purchase on the terms and conditions hereinafter set forth.

"2. The Seller agrees, as soon as possible after the close of business on April 30, 1943, to have a statement of the assets and liabilities of Gus Mayer Co., Limited prepared by a certified public account-

ant, which statement of assets and liabilities shall show the value of fixtures at $25,000.00 regardless of the amount for which they are now carried on the books, and shall also show supplies at value, and shall also show all present liabilities as well as all accrued liabilities, including those for taxes, and shall also show all prepaid assets.

"3. Upon presentation to Buyer of said statement, Buyer agrees to purchase from Seller all of the stock of said Gus Mayer Co., Limited, at a price equal to the net worth of Gus Mayer Co., Limited, as shown on said statement, said purchase price to be paid as follows:

"(a) cash to the aggregate amount of the cash and accounts receivable shown on said statement;

"(b) the amount of the merchandise inventory shown on said statement to be paid in six equal monthly installments, starting June 1, 1943, with interest at the rate of 5% per annum;

"(c) all other assets to be paid for in equal monthly installments, starting June 1, 1943, up to and including September 1, 1949, with interest at the rate of 5% per annum.

"4. The deferred portion of the purchase price is to be represented by two installment notes; and the purchased stock is to be delivered by the Seller to the Buyer upon the payment of the cash portion of the purchase price and the furnishing of said notes."

In conformity with the contract, Augustus F. Mayer turned over the complete management and operation of the store to Weiss Brothers on April 30, 1943. On that date, after the store closed, he introduced Meyar Weiss to the employees, telling them that he had sold out and from that time on would have nothing further to do with the management of the store. The risk of gain or loss from the operation of the business then passed to Weiss Brothers, the purchasers of the stock, who were on May 1, 1943 and at all times afterward in complete charge of the corporation.

On May 1, 1943, Mayer called at the Canal Street store for the purpose of picking up his mail and turning over to Weiss the keys to the safe, which he had forgotten to deliver the night before. While he was in the store, Weiss delivered to him two checks payable to his order, one being a check of Weiss Brothers for $62,599.41, not in dispute, and the other a check of Gus Mayer Co., Ltd., for $221,547.25, being item (a) of the items in dispute. Weiss in his capacity as the new owner ordered the drawing of the latter check, charging it as a loan from the corporation to Weiss Brothers. The amounts of the two checks were arrived at on the basis of a rough estimate by the parties of the cash and net worth position of the corporation as of April 30, 1943, subject to adjustment by the audit to be thereafter completed. On the same date, May 1, 1943, in order to prevent the bank balance from being reduced to too low a level, Weiss Brothers made a separate deposit of $25,000 of their individual funds to the bank account of Gus Mayer Co., Ltd.

By May 28, 1943, the certified public accountant chosen to ascertain the price under the purchase agreement had substantially completed his work, but had not prepared a formal written statement. He brought his work sheets to the office of Mayer's attorney, where the sale was closed in accordance with those work sheets. The total purchase price of the stock was fixed at $530,212.49, shown to be the net worth of the company at April 30, 1943, adjusted as required by the purchase agreement. At this May 28, 1943 meeting, a part of the purchase money paid to Mayer consisted of a check of Weiss Brothers in the amount of $104,496.92 which for some unexplained reason was back dated to May 1, 1943. That check constitutes item (d) in the list of disputed items. Thereafter, without Mayer's knowledge, Meyar Weiss drew a separate check to Weiss Brothers

from Gus Mayer Co., Ltd., for an identical amount, $104,496.92.

Sometime between April 30, 1943 and May 28, 1943, Meyar Weiss discussed with Mayer the fact that among the assets of Gus Mayer Co., Ltd. appeared certain shares of Molybdenum stock valued at $4,775 and certain United States G Bonds valued at $25,000 [items (b) and (c) of the items in dispute]. Weiss did not wish to retain these items in the assets of the corporation and Mayer agreed to accept them. These items were delivered by Weiss to Mayer and their value was charged on the books of the corporation against Weiss Brothers as a loan from the corporation.

The formal written report of the auditor was submitted on June 1, 1943, showing the closing of the sale as follows:

"The purchase agreement, and the delivery of the 5,000 shares of capital stock, were all completed in the office of Mr. Irving Saal, Attorney, on May 27, 1943 as follows:

Mr. M. R. Weiss acknowledged having received certificates for 5,000 shares of the Gus Mayer Co., Limited, at a cost of .......................... 530,212.49

Mr. Gus Mayer acknowledged receiving or having previous received—as follows—

Cash from Weiss Bros.:

First Payment ..............221,547.25
Second Payment ...........104,496.92
Third Payment ............. 62,599.41
Fourth Payment ........... 106.44

Total Cash: ................ 388,750.02
Securities—U. S. Bonds ...... 25,000.00
Various Stocks ............. 4,775.00 29,775.00

One Note dated May 1, 1943, bearing 5% per annum, to be paid in six months for 46,687.47
One Note dated May 1, 1943, bearing 5% per annum, payable in equal monthly installments, beginning June 1, 1943, and ending September 1, 1949 for .......... 65,000.00

*Total Purchase Price:* .......................... 530,212.49

\* \* \* \* \* \* \* \* \*

" \* \* \* We have charged to Weiss Bros. Special Account, the cash and securities, withdrawn by Weiss Bros. These withdrawals are as follows:

Cash drawn by or for account of Weiss Bros.:

First Withdrawal 221,547.25
Second Withdrawal 104,496.92 326,044.17

U. S. Bonds Withdrawn 25,000.00
Stocks Withdrawn 4,775.00 29,775.00

Total Withdrawals for A/c of Weiss Bros.: 355,819.17"

The last four of the items in dispute, items (e) through (h), were not reflected on the books of Gus Mayer Co., Ltd., and were not taken into account in fixing the price paid by Weiss Brothers. Items (e) and (f) arose from the fact that

Gus Mayer Co., Ltd. had formerly operated branch stores in Memphis and Birmingham, but had terminated those operations. The furniture and fixtures at Memphis had not been sold at April 30, 1943, but were leased out under a rental arrangement. The furniture and fixtures at Birmingham had been sold and the note receivable of Burke-Andrews, Inc. for $2,400 resulted. The failure to consider these items in closing the purchase of the stock was discovered when a monthly payment of $50 on the Birmingham note came in. In lieu of a cash adjustment on the purchase price, these items were simply turned over to Mayer. Items (g) and (h) in the list of disputed items were policies issued by Mutual Life Insurance Company of New York on Mayer's life. Photostatic copies of the original policies and of the assignment records of the insurance company are in evidence. The policies were issued in 1933 to Gus Mayer Co., Ltd. On June 22, 1943, Meyar Weiss, acting on behalf of Gus Mayer Co., Ltd., executed assignments conveying to Mayer individually the ownership of these two policies. On the same date, Mayer changed the designation of beneficiaries from Gus Mayer Co., Ltd., to his wife. Having reference to these four items, Weiss testified:

> "They were assets of the corporation but they were not included in Mr. LeGardeur's statement nor were they, according to our agreement they were not added in, either I would have had to pay Mr. Mayer for them or turn them over to him."

On June 30, 1943, after all of the stock of Gus Mayer Co., Ltd., had been delivered to Weiss Bros., a charter amendment was filed with the Secretary of State of Louisiana reducing the capital stock of Gus Mayer Co., Ltd., from $500,000 to $164,500. The entry in the corporate books recording the reduction of capital stock was as follows:

| "Capital Stock | | $335,500.00 |
| Surplus | | 20,272.58 |
| Acct. Rec. Weiss Bros. | $355,772.58" | |

A number of additional facts and circumstances we consider unnecessary to be stated, because they do not in any way contradict the controlling facts which have been recited, but do tend strongly toward confusion.

The district court concluded:

> "The net effect of the distribution of the accumulated earnings and profits of Gus Mayer Company, Ltd., occurred at such time and in such manner as to make the distribution and subsequent reduction and redemption of stock essentially equivalent to the distribution of a taxable dividend, and the amount so distributed was properly treated as a taxable dividend."

██ We do not agree. Each of the disputed items was part of the purchase price paid to the taxpayers for their corporate stock. Under the undisputed facts and circumstances, Weiss Brothers became the beneficial owners of all of the capital stock of Gus Mayer Co., Ltd., on April 30, 1943. Such beneficial ownership was not prevented or postponed by Mayer's retention of title to the stock pending the ascertainment and payment of the purchase price. If a dividend had been distributed after April 30, the benefit thereof would have accrued not to the taxpayers but to Weiss Brothers. Any such dividend received by the taxpayers after that date was applied as a payment on the agreed purchase price of the stock, and should not be treated as a dividend distributed to the taxpayers.[1]

██ Further, under the undisputed facts, Gus Mayer Co., Ltd., was vested

1. Moore v. Commissioner of Internal Revenue, 7 Cir., 1941, 124 F.2d 991, 993; De Guire v. Higgins, 2 Cir., 1941, 159 F. 2d 921; Northern Trust Co. of Chicago v. United States, 7 Cir., 1951, 193 F.2d 127, 131; Zenz v. Quinlivan, 6 Cir., 1954, 213 F.2d 914, 917; In re Estate of Hobson, 1950, 17 T.C. 854, 861. See also Wilson v. Commissioner of Internal Revenue, 5 Cir., 1955, 219 F.2d 126.

with all of the rights of ownership of disputed items (e), (f), (g) and (h), which had not been considered or taken into account at the closing of the sale of the stock. In lieu of paying the taxpayers the value of those items in accordance with the contract of purchase of the corporate stock, the items themselves were simply transferred to the taxpayers. The value of those four items therefore was not a dividend, but was part of the purchase price received by the taxpayers for their stock.

The judgment is, therefore, reversed and the cause remanded with directions to enter judgment for the taxpayers. See 28 U.S.C.A. § 2106.

Reversed with directions.