JOHN R. WEST AND CAROLYN J. WEST, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85062. Filed January 12, 1962.

*Bertrand Rhine, Esq.,* for the petitioners.
*Edward M. Fox, Esq.,* for the respondent.

#### OPINION.

RAUM, *Judge:* Respondent determined a deficiency of $3,967.96 in petitioners' income tax for the year 1956. The facts have been stipulated.

Petitioners, husband and wife, are residents of San Pedro, California. They filed original and amended joint income tax returns for 1956 on April 15, 1957, and June 20, 1958, respectively, with the district director of internal revenue at Los Angeles, California.

For many years prior to December 20, 1955, John R. West (hereinafter referred to as petitioner) owned and controlled all of the 8,248 outstanding shares of capital stock of West-Marquis, Inc., an advertising agency, organized as a California corporation in 1936 with an authorized capital stock of 25,000 shares.

During its taxable year ending on February 28, 1955, West-Marquis, Inc., incurred a net operating loss of approximately $25,679.45. On or about July 15, 1955, it filed a claim for refund of Federal income taxes in the amount of $17,649.92, which it had paid for the taxable

years ending on February 28, 1953, and on February 28, 1954. The claim for refund was based on the net operating loss deductions applicable to those years, resulting from the carryback of the net operating loss incurred in the taxable year ending February 28, 1955. At or about the time the claim for refund was filed, West-Marquis, Inc., recorded it as an asset valued at $17,649.92 on its books. Subsequently, but prior to December 31, 1955, the value of the claim was reduced to $17,321.76 on its books.

On December 20, 1955, petitioner entered into a "Stock Purchase Contract" in which he agreed to sell his entire 8,248 shares of stock in West-Marquis, Inc., to Moeller & Somermeier, Inc., for a "tentative price" to be "computed upon the book value" of the shares of stock "as determined by West-Marquis, Inc.'s Financial Statements as of December 31st, 1955 (excluding therefrom a claimed asset in the amount of $17,649.92 on account of an Income Tax refund)." Par. 2(a). The "final price" was dealt with in paragraph 2(b) as follows:

The final price shall be determined two years after date of this contract upon the basis of West-Marquis, Inc.'s Financial Statement as of December 31st, 1955 taking into account thereon such adjustments on uncollectable accounts receivable; prepayment or past payment of such items as subscriptions, premiums; income tax adjustments; and liabilities which do not appear on the books of the corporation, and such adjustments in said items as may appear to be necessary and proper to truly reflect the book value of said shares will be made at that time.

In accordance with the adjustments provided for in paragraph 2(b), it was determined on March 20, 1958, that petitioner was to receive $2,270.65 over the tentative price for his stock.

The specific exclusion of the claim for refund in paragraph 2(a) arose out of the buyer's natural unwillingness to purchase an asset of such uncertain value, and, because at the time the agreement was signed, there was no assurance that the claim would be settled within the 2-year adjustment period.

On December 21, 1955, West-Marquis, Inc., by Norman B. Moeller, executed an assignment agreement under the terms of which "in consideration of the payment of Ten ($10.00) Dollars, receipt of which is hereby acknowledged" West-Marquis, Inc., undertook to transfer to petitioner the $17,649.92 claim for refund of Federal income taxes as well as three accounts receivable which had previously been charged off as bad debts by West-Marquis, Inc. In 1957, petitioner realized $190.34 on one of these accounts (LIKWID GRO, Inc.), and on their 1957 joint income tax return, petitioners reported as income the amount of $180.34, which represented the $190.34 realized from LIKWID GRO, Inc., less $10, the "cost" of the assignment agreement to petitioner.

On or about March 6, 1956, the Internal Revenue Service tentatively

allowed the claim for refund of income taxes for the years ending February 28, 1953, and February 28, 1954, filed by West-Marquis, Inc., and paid to that corporation the amount of $17,321.76. This payment was subject to future adjustment in the event an examination of its books and records by the Internal Revenue Service disclosed that some adjustment should be made. After making this examination the Internal Revenue Service, on November 25, 1958, approved the claim in the amount previously refunded.

On or about March 6, 1956, upon receipt of the $17,321.76 from the Internal Revenue Service, those persons in control of West-Marquis, Inc., promptly caused the money to be paid over by West-Marquis, Inc., to petitioner in accordance with the assignment agreement.

As of December 31, 1956, petitioner had received from the buyer, pursuant to the terms of the stock purchase contract, the following payments (excluding the $17,321.76 which is in controversy herein):

| Date | Amount of payment |
|---|---|
| Dec. 20, 1955 | $10,000 |
| Apr. 3, 1956 | 25,000 |
| June 15, 1956 | 3,500 |
| Dec. 17, 1956 | 3,500 |
| Total | 42,000 |

On December 20, 1955, petitioner's adjusted basis in his 8,248 shares of stock of West-Marquis, Inc., was $26,675.97.

For 1956 petitioners kept their books and reported their income on the cash method of accounting. On their original 1956 income tax return petitioners reported no profit from the sale of the West-Marquis, Inc., stock. On their amended income tax return for that year, they reported the gain realized on the sale as of December 31, 1956, as follows:

Proceeds of sale:

| | | | |
|---|---|---|---|
| Dec. 20, 1955 | An (sic) execution of agreement | | $10,000.00 |
| Mar. 6, 1956 | Federal income tax refund to the corporation paid to taxpayer as part consideration of sale | | 17,321.76 |
| Apr. 3, 1956 | Payment on account | | 25,000.00 |
| June 15, 1956 | Payment on account | | 3,500.00 |
| Dec. 17, 1956 | Payment on account | | 3,500.00 |
| Total proceeds to Dec. 31, 1956 | | | 59,321.76 |
| Deduct cost of stock sold: | | | |
| Original investment in March 1936 | | $2,500.00 | |
| Additional stock purchased in February 1946 | | 10,003.84 | |
| Purchase of costockholders interest under contract dated in 1948 | | 14,172.13 | 26,675.97 |
| Remainder—excess of sale proceeds over cost basis to Dec. 31, 1956 subject to long-term capital gains treatment | | | 32,645.79 |

In the deficiency notice respondent determined that the $17,321.76 received by petitioner in 1956 from West-Marquis, Inc., was taxable as ordinary income. Petitioners contend that this amount was in substance (if not in form) partial consideration for the West-Marquis, Inc., stock and that it was properly included by them in their amended return for the year 1956 in computing the long-term capital gain realized on the sale of the stock. We do not agree.

The payment of $17,321.76 to petitioner by West-Marquis, Inc., was neither in form nor in substance part of the purchase price for his stock. The buyer deliberately, for reasons of its own, refused to purchase stock of a corporation which had the claim for refund of taxes as one of its assets that had to be reflected in the purchase price. Instead, it insisted that such asset be eliminated, and the assignment of December 21, 1955, to petitioner gave effect to the agreement of the parties in this connection.[1] The fact that it was dated December 21, 1955, 1 day after the date of the stock purchase contract, is a matter of no consequence here, for it is plain that the assignment was an integral part of the entire transaction and merely formalized what was already understood and agreed to. Moreover, that assignment was made, not by the purchaser, but by the corporation itself, and when the claim for refund finally bore fruit in 1956, it was the corporation that received payment but it held the funds simply as a conduit and only long enough to transmit them to petitioner. In these circumstances, the payment was not in any way a portion of the price which petitioner received for his stock. Cf. *T. J. Coffey, Jr.*, 14 T.C. 1410, appeal dismissed (C.A. 5).

*Mayer* v. *Donnelly*, 247 F. 2d 322 (C.A. 5), upon which petitioners rely, is not in point. Although the facts are superficially similar, the contract of sale in that case did not require the elimination of any assets in determining the value of the stock and the court treated the transaction on the facts before it as a subsequent bona fide withdrawal of corporate assets by the purchaser of the stock who used them as part payment of a purchase price determined in accordance with an agreed formula. The facts before us are quite different.

Since the only issue argued by petitioner was whether the amount in controversy constituted a portion of the purchase price and since we have decided that issue against him, it does not become necessary to determine just how the payment should be classified. Whether it be treated as a dividend, cf. *T. J. Coffey, Jr.*, 14 T.C. 1410; *Merrill C. Gilmore*, 25 T.C. 1321; *Steel Improvement & Forge Co.*, 36 T.C. 265, or an amount received in discharge of a claim, cf. *DeWitt M. Sher-*

---

[1] Regardless of whether the assignment was nugatory as against the United States (see Assignment of Claims Act of May 15, 1951, 65 Stat. 41, amending R.S. sec. 3477, 31 U.S.C. sec. 203), it could be effective in fixing the rights of the assignor and assignee *inter sese*. See *McKenzie* v. *Irving Trust Co.*, 323 U.S. 365, 369.

*wood,* 20 T.C. 733; *Lewis N. Cotlow,* 22 T.C. 1019, affirmed 228 F. 2d 186 (C.A. 2) ; *Pat N. Fahey,* 16 T.C. 105, it was plainly ordinary income and not capital gain.

*Decision will be entered for the respondent.*