Richard A. Brown v. Commissioner.
Brown v. Commissioner
Docket No. 5932-67.
United States Tax Court
T.C. Memo 1969-99; 1969 Tax Ct. Memo LEXIS 197; 28 T.C.M. (CCH) 542; T.C.M. (RIA) 69099; May 15, 1969, Filed John S. Mahle, Jr., Tower Bldg., Baltimore, Md., for the petitioner. Gerald D. Babbitt, for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's federal income tax liability for the year 1963 in the amount of $3,141.60. This deficiency arises by reason of respondent's determination that petitioner "realized ordinary income in the amount of $6,924.10 * * * from collections of purchased receivables in lieu of long term capital gain reported." Among the "purchased receivables" referred to by respondent were "hypothecations" in the amount of $1,242.79. At the trial herein respondent conceded that "the gain of $1,242.79 * * * derived * * * from the hypothecations purchased on November 30, 1962 constitute *198 capital gain and not ordinary income." Findings of Fact The parties have filed a stipulation of certain facts. We find the facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. Petitioner at all pertinent times lived in Severna Park, Maryland. He filed his federal income tax return for 1963 with the district director of internal revenue at Baltimore, Maryland. Petitioner was the president and a minority stockholder of Monumental Engineering, Inc., a Maryland corporation. In 1963 he was also president of Consolidated Securities Savings and Loan Association in Glen Burnie, Maryland. At some time prior to November 30, 1962, the assets of Monumental Engineering, Inc. (hereinafter referred to as Monumental) passed into the hands of Jerome M. Asch as Trustee in Insolvency. Prior to the assignment of these assets to Asch as Trustee, petitioner as president of Monumental had "had dealings" with Asch. On November 30, 1962, petitioner purchased from the Trustee in Insolvency certain notes receivable, accounts receivable, hypothecations receivable and a mortgage receivable owned by Monumental. Petitioner intended to make *199 a profit from the receivables thus acquired from the Trustee by (1) collecting from the obligors from whom the receivables were owing more than he paid therefor or (2) selling the receivables to third parties at a discount but for more than he paid therefor. In order to induce some of the obligors from whom he was unable to collect in full to pay to him amounts greater than the amounts paid by him for the several obligations, petitioner offered to accept from them in satisfaction of the obligations amounts less than the face value thereof but in excess of the amounts which he had paid therefor. With regard to 1 note receivable, 2 accounts receivable and the mortgage receivable, the obligors made the agreed payments in installments. With regard to the other receivables the obligors made lump-sum payments. When the agreed payments were made by the obligors, any instruments evidencing the debts were delivered to them. With regard to the notes receivable, accounts receivable and the mortgage receivable, the following schedule discloses the names of the obligors, the face amount of each obligation as of November 30, 1962, the amounts received from the respective obligors during 1963, *200 the amount of petitioner's cost in the respective obligations which is deductible in arriving at petitioner's taxable gain, and the taxable gain or loss derived by petitioner in 1963 with respect to each obligation: 544 (A) Obligors
(b) Face Amountof Obligation on November 30, 1962
(C) Amounts Receivedfrom Obligorsin 1963
(E) Petittioner's Taxable Gainin 1963
Notes Receivable:
W.L. McMillion
$ 700.00
$ 195.00
$ 168.63
$ 26.37
B. Sewell
38.00
38.00
9.15
28.85
J. Ray
125.00
120.00
30.11
89.89
J. McIver
341.00
166.67
85.15
84.52
166.67
82.15
84.52
R. Meyers
1,100.00
610.00
264.99 345.01 *10 Gain in 1963 from Notes Receivable
$ 574.64
Accounts Receivable:
M. Rharrington
$ 160.00
$ 65.00
$ 34.11
$ 30.89
G. Blucher
100.00
100.00
21.32
78.68
R. Sonderman
20.00
20.00
4.26
15.74
W. Gribble
400.00
350.00
85.28
264.72
F. Orlando
153.00
153.00
32.61
120.39
W. Thomas
67.08
35.00
14.30
20.70
C. Strawbridge
45.00
45.00
9.59 35.41 *10 Gain in 1963 from Accounts Receivable
$ 566.53
Mortgage Receivable:
H. Kilgore
$ 952.73
$ 585.43
$ 245.79
$ (2.95) *10
Less: Expense (342.59)
242.84 *10
Loss in 1963 from Mortgage Receivable $ (2.95)
Total Net Taxable Gain in 1963 from Notes Receivable, Accounts Receivable and Mortgage Receivable $ 1,138.22
*201 On March 11, 1963, petitioner purchased from the Trustee in Insolvency of Monumental a mortgage known as the Porter Mortgage securing an indebtedness of Harry B. Porter and his wife to Monumental incurred by them in 1961. This indebtedness assigned by the Trustee to petitioner on February 1, 1963, arose from a construction contract between the Porters and Monumental calling for the payment of a "cash price" of $5,092.00. It is stipulated that the amount of $8,870.40 represents the "time payment sale price" of the home to be constructed by Monumental for the Porters on property owned by them in Delaware and that the "time payment sale price" secured by the mortgage was payable in 83 equal monthly installments of $105.60 and an 84th installment in the amount of the balance. The Porters were not satisfied with the work done by Monumental in connection with the construction of their home and they paid none of the installments called for under their agreement to pay the time payment sales price of $8,870.40. Accordingly, the amount still due and owing on the Porter mortgage was $8,870.40 on March 11, 1963. At the time petitioner acquired this mortgage he was aware of the Porters' defaults *202 and the reasons therefor. Shortly after March 11, 1963, the petitioner, through Jackson W. Raysor, his attorney in Georgetown, Delaware, entered into settlement negotiations with the Porters. The outcome of these negotiations was that in April of 1963 the Porters paid $5,390.82 to the petitioner's attorney in full settlement of their obligation of $8,870.40. On April 4, 1963 the petitioner's attorney transmitted to the petitioner the amount he had received from the Porters, namely, $5,390.82 less his attorney fee and costs of $545.61, or a net of $4,845.21. The parties agree that the amount of $5,108.68 reflected in Exhibit A of the statutory notice of deficiency as having been received by the petitioner in 1963 with respect to the Porter mortgage is actually $4,845.21 and that the petitioner's gain in 1963 with respect to the Porter mortgage is $4,279.62 rather than $4,543.09 as indicated in Exhibit A of the statutory notice of deficiency. It is also agreed that the face amount of the Porter mortgage as of March 11, 1963 was $8,870.40 rather than $5,198.42 as indicated in Exhibit A of the statutory notice of deficiency. The petitioner concedes that the respondent has properly *203 determined his cost basis in all of the accounts receivable, notes receivable, hypothecations and mortgage receivable purchased by the petitioner on November 30, 1962 and that the amount of cost basis allowed by the respondent as a deduction in computing the petitioner's taxable gain in 1963 with respect to each one of these individual items is also correct. The petitioner concedes that the respondent has properly determined his cost basis in the Porter Mortgage and that the amount allowed by the respondent as a deduction in computing the petitioner's gain from the Porter Mortgage in 1963 is also correct. 545 Opinion KERN, Judge: The question before us is whether the proceeds of various choses in action acquired by petitioner from the Trustee in Insolvency of a corporation of which he was an officer and stockholder were taxable to him as capital gains realized by him from "the sale or exchange" of such choses in action where the proceeds represented payments made by the obligors on the choses in action in amounts equal to or less than the amounts of their original obligations. If the proceeds received by petitioner from the obligors are to be considered as the collection *204 of the choses in action in full or in lessor amounts agreed upon as settling the indebtedness there would be no "sale or exchange" giving rise to any gain realized within the meaning of section 1222(1) and (3), Revenue Act of 1954, [1] since immediately upon the collection or settlement of the choses in action they cease to exist and consequently cannot be considered as property or assets sold or exchanged by petitioner to the obligors. Therefore any gain realized by petitioner as a result of the receipt by him of payments made by obligors in satisfaction or settlement of their debts which were in excess of the amounts paid by petitioner as the purchase price of such obligations would not be capital gains but would, to the contrary, constitute ordinary income. See Hale v. Helvering, 85 F. 2d 819 (C.A.D.C.); Charles E. McCartney, 12 T.C. 320 (1949); Pat N. Fahey, 16 T.C. 105 (1951); Mace Osenbach, 17 T.C. 797 (1951), aff'd. 198 F. 2d 235 (C.A. 4); Galvin Hudson, 20 T.C. 734 (1953); and Arthur E. Wood, 25 T.C. 468 (1955). *205 With regard to all of the choses in action here involved, with the exception of the so-called "Porter Mortgage," petitioner testified that he intended to "sell" and "sold" the debts to the original obligors. Obviously we are not bound by the nomenclature which petitioner chooses to give to the transactions clearly portrayed by the record. These were the receipt by petitioner from the obligors of certain indebtedness, pursuant to agreements negotiated between them, of amounts equal to or less than the amounts of the original indebtedness and in satisfaction or in settlement thereof followed by the delivery to the obligors of any instrument evidencing such obligations thus satisfied or settled. Thus the only things passing from petitioner to the obligors were valueless papers purporting to evidence satisfied and therefore non-existent debts (and with regard to the accounts receivable there were not even those valueless papers). It may well be that petitioner intended to sell whatever choses in action he was unable to collect from or settle with the original obligor, but the fact was that he *206 did effect the collection or settlement of each of the choses in action here involved and consequently made no sale or exchange from which he realized gain. With regard to the so-called Porter Mortgage, petitioner contends that there was a renegotiation of the contract by him rather than a collection and that the Porters, by giving up claimed defenses as to their liability on the original contract, were in effect transferring property rights to petitioner in return for which he "sold" at least some part of the original indebtedness. Confining ourselves to the facts shown by the record as distinguished from the characterization of those facts found in petitioner's self-serving, opinion testimony, we are unable to conclude that petitioner has proved that his receipts from the Porters were anything other than collections from original obligors in settlement and satisfaction of the original obligations. Specifically we conclude that petitioner has not proved that these receipts were derived from "the sale or exchange of a capital asset." Because of concessions made by respondent, Decision will be entered under Rule 50. 546 Footnotes
1. SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES. For purposes of this subtitle - (1) Short-term capital gain. - The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 6 months, if and to the extent such gain is taken into account in computing gross income. * * * (3) Long-term capital gain. - The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income.↩