STEPHEN F. KESSLER AND ANNA MERLE KESSLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kessler v. Commissioner
Docket No. 9478-78.
United States Tax Court
T.C. Memo 1982-432; 1982 Tax Ct. Memo LEXIS 317; 44 T.C.M. (CCH) 624; T.C.M. (RIA) 82432; July 28, 1982. Stephen F. Kessler, pro se. Theodore F. Brill,Ivan A. Gomez, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge:* Respondent determined an $11,805.38 deficiency in petitioners' 1974 income tax. The sole issue for *318 decision is whether petitioners realized ordinary income or capital gain on receipt of five percent of the profits from the sale of certain real property. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of fact, together with the attached exhibits are incorporated herein by this reference. Stephen F. Kessler ("petitioner" herein) and Anna Merle Kessler, [1] husband and wife, resided in Coral Gables, Florida, at the time they filed their petition. Petitioners filed their joint Federal income tax return for the calendar year 1974 with the district director of the Internal Revenue Service in Chamblee, Georgia and are cash basis taxpayers. Petitioner is an attorney and has practiced law in the Miami, Florida area during all times relevant herein. During the years 1956 to 1964, petitioner practiced law in partnership *319 with Irwin S. Gars under the name "Kessler and Gars." The law partnership will hereinafter be referred to as Kessler and Gars. In addition to their law partnership, petitioner and Mr. Gars were equal partners in a real estate investment partnership (the "investment partnership" herein). [2] Among other things, the investment partnership promoted and sold real estate investments to the clients of Kessler and Gars. It was the intention and understanding of both petitioner and Mr. Gars that all profits and losses from the investment partnership would be shared equally. *320 During the mid-1950's the Florida real estate market was going through a boom period. Speculators made purchases with the expectation of realizing a profit on resale within a short period of time. In 1956 Leonard Ross, a client of Kessler and Gars and a real estate promoter, acquired an option to purchase certain real property located in Martin County, Florida (the "Martin County Property" herein). Since Mr. Ross could not arrange financing to complete the purchase, he assigned the option to Mr. Gars. Mr. Gars acquired the option on behalf of the investment partnership. [3]
*321 Many of Kessler and Gars' clients were interested in making real estate investments. To accommodate these clients and to provide capital for the purchase of the Martin County Property, the investment partnership sold to certain of these individuals fractional participating interests in the property, [4] with the understanding that Mr. Gars would take title to the property as trustee on behalf of all participating interest owners. Each purchaser of a participating interest received a fractional beneficial interest in the whole property which was subject to payment to Mr. Gars of 15 percent of the profits, if any, to be received upon subsequent resale. In acknowledgement of this arrangement, each participant signed a statement when he purchased his interest substantially similar to the following: [5]
*322 The undersigned participant hereby acknowledges that he has paid to Irwin S. Gars, as Trustee, the sum of       for participation in the above-described transaction, and under the terms and conditions as set forth above, and that they agree to abide by said conditions. The undersigned participants understand and agree that Irwin S. Gars, as trustee, shall handle all papers and legal work in connection with the purchase and sale of said property for their participating interest, and that for the services so rendered, the Trustee is to receive 15% of the profits which the participant shall receive over and above the amount hereinabove set forth as invested, and that the Trustee is to receive no compensation whatsoever in the event said property is not sold for a profit, or is sold for a loss. Between 1956 and 1957 Mr. Gars sold 90 percent of the participating interests in the Martin County Property to various purchasers. In 1957 Mr. Gars exercised the option on the Martin County Property and took title to the property as trustee for the participating interest owners. [6] Mr. Gars also signed a purchase money note when he took title to the property. [7] Since 10 percent of *323 available participating interests remained unsold when the option on the Martin County Property was exercised, petitioner and Mr. Gars each purchased a five percent participating interest at closing in their individual capacities. [8] These interests were subject to the 15 percent profits interest noted above. Accordingly, all participating interests in the Martin County Property (including those purchased by Mr. Gars. and petitioner) were subject to the investment partnership's right to receive 15 percent of the profits from the ultimate sale of the realty. It was anticipated that petitioner and Mr. Gars would share equally in profits which ultimately derived from the investment partnership's profits interest in the Martin County Property. Neither petitioner nor Mr. Gars reported any amount as income from the investment partnership's receipt of the 15 percent profits interests in the years the interests were received, since the fair market value of such interest was unascertainable on the date of receipt. *324 Shortly after the closing on the Martin County Property, the real estate market in Florida became depressed and remained that way for approximately 6 or 7 years until the early 1960's. [9] During this time petitioner and Mr. Gars in their individual capacities purchased additional participating interests so that by August, 1964, they each held 7-1/4 percent of the total participating interests. From 1956 through 1964, the investment partnership handled all the legal, organizational and managerial aspects of the purchase of the Martin County Property and its subsequent maintenance. On August 21, 1964, petitioner and Mr. Gars executed a "Dissolution of Partnership" providing for the dissolution of the legal partnership of Kessler and Gars. This dissolution agreement also provided for *325 the handling of the investment partnership's numerous outstanding real estate investments in the future, without, however, dissolving the investment partnership itself. Specifically, paragraph 7 of the Dissolution of Partnership stated: That attached hereto, marked Schedule "G", is a list of pending matters, which each partner shall continue to work on separately as indicated thereon. Included in these matters are several matters which may result in liability or loss to Kessler & Gars. Therefore, all funds received from these matters, or all liabilities which may accrue because of these matters, shall be the joint and equal responsibility of Stephen F. Kessler and Irwin S. Gars, and all funds received above liabilities shall be deposited to [sic] K-G Reserve Account, or if not available to be paid therefrom, then each of the parties hereto shall be jointly responsible, each to the other, for one half of any such liabilities. Schedule "G" of the Dissolution of Partnership lists the Martin County Property among those matters to be handled individually by Mr. Gars. [10]
*326 Petitioner sold his 7-1/4 percent participating interest in the Martin County Property in 1964 after the dissolution of Kessler and Gars. [11] From 1964 through 1972 Mr. Gars' new law firm ("Gars and Dixon" herein) performed services connected with the Martin County Property including negotiating sales, attending meetings, and maintaining books and records. Since 1964 petitioner has not performed any services relating to the Martin County Property. In 1972 petitioner learned from a participating interest owner in the Martin County Property that sales of the property would soon be resulting in a profit. Upon learning this, petitioner approached Mr. Gars and asserted his right to one-half of the 15 percent profits interest. Mr. Gars contended that petitioner was not entitled to any portion of the *327 15 percent profits interest. In settlement of this controversy, on November 16, 1972, petitioner, Mr. Gars, and Gars and Dixon executed an agreement ("the November 16, 1972 Agreement" herein) settling the dispute. This agreement recited: (1) that the partnership of Kessler and Gars was originally entitled to receive the 15 percent profits interest; and (2) that since 1964 all services in connection with the Martin County Property have been rendered by Gars and Dixon. In recognition of these recitals, petitioner, Mr. Gars, and Gars and Dixon agreed that the 15 percent profits interest would be shared one-third each. Petitioner did not report any amounts as income as the result of the November 16, 1972 Agreement. In 1974 petitioner received $23,324.32 as his one-third share of the profits interest. However, the record makes it clear that the amounts the investment partnership received under the 15 percent profits interest did not merely represent 15 percent of the excess of proceeds from sales of the underlying realty over the cost basis in that property. Rather, the 15 percent profits figure represented 15 percent of the excess of gross receipts from the property (including such *328 ordinary income items as forfeited deposits, interest income, sign rental income, as well as gains from sales of the underlying property), over gross expenditures relating to the property (including cost of the underlying realty as well as operating expenses such as travel, recording, photostats and surveys, abstracts, real estate taxes, etc.). Petitioner reported this amount as long-term capital gain on his 1974 joint tax return. Mr. Gars reported his share of the profits attributable to the 15 percent profits interest as ordinary income. In his statutory notice of deficiency, respondent determined that petitioner should have reported the $23,324.32 as ordinary income. [12]
OPINION
The only question for decision is whether petitioner's receipt of $23,324.32 in 1974 as his share of the 15 percent profits interest is taxable as ordinary *329 income or long-term capital gain. Petitioner offers two alternative theories in support of his contention that the amounts in dispute represent gain from the sale or exchange of a capital asset. First, petitioner argues that: 1. When he and Mr. Gars as investment partners obtained an option to purchase the Martin County Property, the option was a valuable capital asset; 2. When participating interests in the property were sold, the investment partnership retained an interest in the underlying property -- i.e., the profits interest; and 3. Since the underlying property was a capital asset [13] when it was sold, petitioner's share of the profits from the sale constitutes capital gain rather than ordinary income. Alternatively, petitioner argues *330 that when he and Mr. Gars, executed the November 16, 1972 Agreement he exchanged a contested 7-1/2 percent profits interest for an uncontested 5 percent profits interest. As a result of this exchange, petitioner contends that his 5 percent profits interest became a capital asset and he therefore realized capital gain when Mr. Gars later sold the underlying property. Respondent, on the other hand, argues that petitioner and Gars received the profits interest in exchange for services and thus petitioner had ordinary income when he received his share of the profits. Although petitioner has from the outset contended that the relationship established between the investment partnership and the purchasers of participating interests in the Martin County Property was that of a joint venture-partnership for Federal tax purposes, he has not, either in his petition, opening brief, or supplemental brief, [14] specifically relied upon the relevant provisions of Subchapter K [15] in support of his contention that the amounts in dispute represent capital gain. Rather, petitioner's primary argument seems to be placed outside of the context of Subchapter K. Despite the somewhat paradoxical posture *331 which petitioner appears to take with respect to the presentation of his case, we nevertheless find it necessary to consider petitioner's contention that the tax entity created between the investment partnership and purchasers of participating interests amounted to a joint venture-partnership for Federal tax purposes. This threshold determination must be made, under the present facts, since the analytical focus will necessarily differ depending upon our resolution of this issue. [16]
*332 Petitioner argues, without citation of any provision of the Internal Revenue Code, the regulations or case law, that the relationship established between the investment partnership and purchasers of participating interests in the Martin County Property constituted a joint venture. Respondent, on the other hand, argues that the investment partnership was a mere employee (independent contractor) of the participating interest owners.
Section 761(a) defines a partnership to include any * * * syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on and which is not, * * * a corporation or a trust or estate. Thus, by statutory definition, a joint venture is a form of partnership for Federal tax purposes and it is well established that the basic principles which are applied in determining the existence of a partnership, apply as well to the determination of joint venture status. Estate of Smith v. Commissioner,33 T.C. 465 (1959), affd. on this issue and revd. on *333 other issues, 313 F.2d 724 (8th Cir. 1963); Beck Chemical Equipment Corp. v. Commissioner,27 T.C. 840 (1957); Cleveland v. Commissioner,34 T.C. 517 (1960), affd. on this issue, revd. on another issue, 297 F.2d 169 (4th Cir. 1961). In the case of Culbertson v. Commissioner,337 U.S. 733 (1949), the Supreme Court stated that the primary consideration in determining whether a partnership exists for Federal tax purposes is whether: The parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise * * *. [337 U.S. at 742] Thus, the parties' intent is the single most important consideration in determining partnership status. In Luna v. Commissioner,42 T.C. 1067 (1964), we articulated particular elements, none of which are conclusive, which tend to indicate whether the parties did or did not intend to form a partnership. Such elements include: The agreement of the parties and their conduct in executing its terms; *334 the contributions, if any which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint ventures; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise. [Luna v. Commissioner,supra, at pp. 1077-1078] Applying the tests articulated in the Culbertson and Luna cases, we hold that, under the particular facts and circumstances of this case, no partnership was created between the investment partnership and purchasers of participating interests in the Martin *335 County Property. The agreement entered into by the parties specifically provided: The undersigned participant hereby acknowledges that he has paid to Irwin S. Gars, asTrustee, the sum of     for participation in the above described transaction, and under the terms and conditions as set forth above, and that they agree to abide by said conditions. The undersigned participants understand and agree that Irwin S. Gars, astrustee, shall handle all papers and legal work in connection with the purchase and sale of said property for their participating interest, and that fortheservicessorendered, the Trustee is to receive 15% of the profits whichtheparticipant shall receive over and above the amount hereinabove set forth as invested and that the Trustee is to receive no compensation whatever in the event said property is not sold for a profit or is sold for a loss. [emphasis added]. Since no individual investors were called as witnesses, we must assume that the above agreement is reflective of their true intention. The agreement negates any inference that the investment partnership and purchasers of participating interests *336 intended to enter into a partnership relationship with respect to the Martin County Property. Rather, the agreement clearly indicates that it was contemplated that Mr. Gars, on behalf of the investment partnership, was to act as an employee of the individual investors and was to receive for his services contingent compensation measured by a percentage of the profits from the sale of the Martin County Property. The arrangement thus created is similar to typical employment or independent contractor relationships which are relatively common among lawyers and brokers. Under such circumstances, merely providing for compensation to be measured by reference to profits to be derived from the sale of property does not convert the relationship to a partnership for Federal tax purposes. See e.g., Estate of Smith v. Commissioner,supra;Pounds v. United States,372 F.2d 342 (5th Cir. 1967). In considering the evidence bearing on the intention of the parties, we give weight to several other factors in reaching our conclusion that no partnership existed. First, the record does not show that the investment partnership and purchasers of participating *337 interests filed partnership returns for the relevant taxable years. Second, the investment partnership received the profits interest in lieu of payment of any other compensation for the services rendered. Third, the record clearly shows that the investment partnership was not burdened with any obligation to share losses from the Martin County Property. Fourth, Mr. Gars reported his share of the profits as ordinary income received as compensation for services. Under these circumstances, we are convinced that the requisite intent to form a partnership was lacking. In addition to the absence of proper intent, the investment partnership did not have an interest in capital. [17]Place v. Commissioner,17 T.C. 199 (1951), affd. 199 F.2d 373 (6th Cir. 1952), cert. denied 344 U.S. 927 (1953). The agreement entered into by the parties specifically limited the investment partnership's interest to "* * * 15 percent of the profits which the participant shall receive * * *." As such, the profits interest cannot be construed as an interest in capital. We therefore conclude that petitioner has failed to show that the parties intended to "join *338 together" in the formation of a partnership. The relationship created by the agreement between the investment partnership and purchasers of participating interests was merely an employment relationship and the form of a trust was used only to assure each participant that his funds were protected and that legal and managerial fees would be paid solely from profits. Having decided that the relationship which existed between the investment partnership and purchasers of participating interests did not represent a partnership for Federal tax purposes, we must determine *339 the characterization of the amounts in dispute outside the context of Subchapter K. As noted above, petitioner's primary contention is that the 15 percent profits interest was an interest in the underlying land which was retained by the investment partnership when participating interests were sold, and that amounts received under this interest should therefore be characterized by reference to the character of the land in the hands of the owners thereof on the date of sale. However, we think such characterization would be inappropriate. The agreement entered into between the investment partnership and purchasers of participating interests makes it clear that the purchasers acquired all beneficial ownership in the percentage of the land represented by their participating interests. Simultaneously, the investment partnership agreed that, in exchange for a 15 percent profits interest, it would take title to the property as trustee for the benefit of participating interest owners and would handle all the legal, organizational, and managerial aspects of the purchase of the property, its subsequent maintenance and ultimate sale. The agreement specifically stated that Mr. Gars would *340 be entitled to receive 15 percent of the profits whichtheparticipantshallreceive in consideration for services rendered by the investment partnership. The express language of the agreement is thus completely contrary to petitioner's contention that the profits interest could be considered an interest in the underlying land and therefore constituted a capital asset. The investment partnership retained no part of the underlying property when purchasers acquired participating interests. The record shows, and we have found, that 100 percent of the beneficial interests in the Martin property was sold to persons other than the investment partnership. More importantly, the investment partnership received the profits interest in exchange for services. It is axiomatic that compensation for services rendered constitutes ordinary income under section 61(a). See Pounds v. United States,supra;Gordon v. Commissioner,29 T.C. 510 (1957), affd. 262 F.2d 413 (5th Cir. 1958); Farr v. Commissioner,11 T.C. 552 (1948), *341 affd. sub nom. Sloan v. Commissioner,188 F.2d 254 (6th Cir. 1951); Estate of Smith v. Commissioner,supra.[18] The ordinary income character of compensation for personal services cannot be transmuted into capital gain merely by providing that the amount of the compensation is to be measured by reference to profits to be derived from the sale of a capital asset. Pounds v. Commissioner,supra; Estate of Smith v. Commissioner,supra.Moreover, while the amount that the investment partnership ultimately received was attributable in part to the appreciation in value of the underlying realty, [19] this does not alter the fact that the profits interest was received as compensation for services through the date of sale. [20]Pounds v. Commissioner,supra.
*342 The profits interest received by the investment partnership in exchange for services had no ascertainable value on the date of receipt. The investment partnership was therefore entitled to hold recognition of income attributable to the profits interest in abeyance until the occurrence of a subsequent recognition-triggering event. See e.g., Worthy v. Commissioner,62 T.C. 303 (1974); Shamburger v. Commissioner,61 T.C. 85 (1973), affd. per curiam, 508 F.2d 883 (8th Cir. 1975); Pounds v. Commissioner, supra.In fact, petitioner did not report any amounts in his income as his share of the profits interest when such interest was received. Although the transaction thus remained open until the Martin County Property was sold in 1974, this fact cannot change the character of the income. Hort v. Commissioner,313 U.S. 28 (1941); Gordon v. Commissioner, supra;Pounds v. Commissioner,supra.Accordingly, petitioner's receipt of $23,324.22 in 1974 represented compensation for services and must therefore be treated as ordinary income. We also note that petitioner's share of the profits received *343 in 1974 constitutes ordinary income in any event since there was no "sale or exchange" as required by section 1222(3). [21] Petitioner's mere collection of his percentage of the profits in 1974 cannot be construed as a "sale or exchange" within the meaning of section 1222. See, e.g., Fahey v. Commissioner,16 T.C. 105 (1951). The subject of the sale was the Martin County Property, not petitioner's profits interest, and since we have held that the profits interest did not constitute an interest in the land itself, it necessarily follows that the requisite "sale or exchange" element is lacking. [22]
*344 Petitioner offers an alternative position to support his contention that the amounts in dispute represent capital gain. Petitioner contends that in 1972 he exchanged his contested 7-1/2 percent profits interest for an uncontested 5 percent profits interest and that somehow this exchange converted his interest into a capital asset. This argument is both difficult to comprehend and, to the extent we do understand petitioner's position, it is without merit. The November 16, 1972 Agreement did not constitute an exchange of petitioner's contested 7-1/2 percent profits interest for an uncontested 5 percent profits interest as argued by petitioner. Rather it settled the disputed rights of petitioner, Mr. Gars and Gars & Dixon to the entire 15 percent profits interest. The agreement merely determined, as between the parties to it, the proper allocation of the profits interest attributable to each. Presumably this allocation was based on the actual contribution in the form of services rendered. The agreement in fact supports the finding that the profits interest is attributable to the services rendered by the three parties involved. [23]
*345 Respondent's determination will therefore be sustained in all respects. Decision will be entered for the respondent.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall, who subsequently resigned from the Court. By order of the Chief Judge the case was reassigned to Judge Jules G. Korner III↩.
1. Anna Merle Kessler is a petitioner in this case solely by virtue of having filed a joint return with her husband.↩
2. The record is ambiguous as to whether the investment partnership was an entity which was separate and distinct from the law partnership of Kessler and Gars. However, petitioner has testified that the investment partnership was, in fact, a separate entity and has specifically requested a finding in this regard. Respondent did not object to petitioner's requested finding. In light of the above, and further since we think that the ultimate result in this case would not differ even assuming arguendo that the real estate purchases were made by the law partnership of Kessler and Gars rather than by a separate investment partnership, composed of the same two individuals, we will proceed under the assumption that the investment partnership was a separate entity from the law partnership.↩
3. Although certain transactions involving the Martin County Property referred only to Mr. Gars, it is clear that Mr. Gars acted in his capacity as a partner of the investment partnership when he acquired the option to purchase the Martin County Property and when he subsequently acquired a 15 percent profits interest in the property. Accordingly, we will refer to the obligations, actions and responsibilities of Mr. Gars and the investment partnership interchangeably when addressing these transactions. Where petitioner or Mr. Gars acted in their individual capacities with respect to the Martin County Property, such will be specifically stated.↩
4. The record is extremely unclear as to whether all of the participating interest owners initially purchased interests in the option which then became interests in the property upon closing, or whether some purchased interests in the property after closing. Because we think this distinction is irrelevant, we will proceed as if the participating interest owners purchased interests in the option. If, however, some did not, our result is unaffected. ↩
5. In his supplemental brief, and upon motion to re-open the record, petitioner contended that the quoted agreement may not, in fact, have been representative and attempted to offer evidence which could (although not necessarily) be construed to support his contention. Obviously, petitioner cannot present evidence in his brief. (Rule 143(b), Tax Court Rules of Practice and Procedure; Evans v. Commissioner,48 T.C. 704, 709 (1967), affd. per curiam 413 F.2d 1047 (9th Cir. 1969)). Moreover, the parties have stipulated that the agreement is representative of agreements signed by all purchasers of interest in the Martin County Property, and the uncontroverted testimony of petitioner's own witness clearly established that the agreement is representative. In light of the fact that this Court will not lightly disregard facts to which the parties have stipulated, (Rule 91(e), Tax Court Rules of Practice and Procedure; Mifflin v. Commissioner,24 T.C. 973 (1955); Henry v. Commissioner,362 F.2d 640↩ (5th Cir. 1966), affg. a Memorandum Opinion of this Court), and since the testimony of Petitioner's own witness is directly contrary to his contention on brief, we denied the motion to re-open the record and introduce evidence which might be inconsistent therewith.
6. The original intention at the time Mr. Gars arranged this deal and purchased the property was that the property would be resold within a year. ↩
7. It is unclear from the record whether the note was recourse or nonrecourse. ↩
8. Petitioner's own testimony makes it clear that these participating interests were purchased by petitioner and Mr. Gars in their individual capacities, and not by the investment partnership. He states that "* * * we individually purchased [the participating interests], ten points at a time."↩
9. The participating interest owners were able to hold onto the Martin County Property because they were a wellknit group. When the real estate market took a downturn they were able as a group to meet the payments required by the mortgage encumbering the property and, when necessary, they arranged for the purchase of participating interests owned by investors needing or wanting to sell out.↩
10. Petitioner's and Mr. Gars' primary concern over the investments listed on Schedule "G" was that should a liability result from a matter assigned to one, the other would share one-half the responsibility therefor.↩
11. It is not the characterization of the amount petitioner received upon the sale of his participating interest which is in dispute in the present case. Rather, the dispute concerns amounts received by petitioner in 1974 as his share of the 15 percent profits interest which Mr. Gars received on behalf of the investment partnership in exchange for his promise to render services.↩
12. As a result of this adjustment, petitioner's adjusted gross income was increased and his allowable medical expense deduction was therefore reduced from the $4,448.00 claimed to $3,748.00 allowed. Thus, our decision on the main issue will automatically affect petitioner's allowable medical expense deduction for his taxable year 1974.↩
13. Arguably the Martin County Property constituted a capital asset in the hands of the participating interest owners. Because petitioner's argument is premised upon this assumption, and further because a specific holding with respect to this issue is not essential to our ultimate conclusion in this case, we assume that the Martin County Property was a capital asset from the perspective of the participating interest holders.↩
14. Since the parties failed to address with specificity the issue of the tax entity created between the investment partnership and purchasers of participating interests (an issue that was raised and contested in the pleadings), we ordered the parties to submit additional stipulations or, failing that, supplemental briefs addressing this fundamental issue. Since the parties were unable to reach a satisfactory agreement regarding this issue, petitioner and respondent filed supplemental briefs. ↩
15. Unless otherwise indicated, all statutory references herein are to the Internal Revenue Code of 1954 as in effect during the years in issue. ↩
16. In the event that the entity created between the investment partnership and purchasers of participating interests in the Martin County Property amounted to a partnership for Federal tax purposes, we would be faced with the question of how to characterize amounts received from a partnership profits interest, which interest was received in exchange for services, and which interest had an unascertainable value on the date of receipt. The resolution of this knotty problem was left somewhat unanswered in Diamond v. Commissioner,56 T.C. 530 (1971), affd. 492 F.2d 286↩ (7th Cir. 1974), and raises conceptual difficulties which directly stem from the operation of the provisions of Subchapter K.
17. Although petitioner and Gars did purchase participating interests in the Martin County Property, these interests were purchased in their individual capacities and not by the investment partnership. Accordingly, the participating interests owned by petitioner and Gars as individuals are not relevant in determining the relationship established between the investment partnership and participating interest purchasers. We do not decide whether such purchasers may have formed a joint venture and been partners inter sese. Even if they did, it is clear to us that the investment partnership was not itself a partner therein.↩
18. See also, Burglass v. Commissioner,T.C. Memo. 1979-246↩ (1979). 19. As indicated in the Findings of Fact, at least a portion of the 15 percent profits received is clearly attributable to various ordinary income items which were generated by the Martin County Property, rather than to sales of the realty itself. ↩
20. Although the parties agree that petitioner rendered no services in respect of the Martin County Property after the dissolution of Kessler and Gars in 1964, this does not alter the result here. The salient factor here is that the profits interest was originally received as compensation for services. Additionally, although Mr. Gars and Gars and Dixon rendered all services in respect of the Martin County Property after 1964, petitioner had responsibility for other property previously handled jointly by petitioner and Mr. Gars, and all profits and losses which accrued to such property were to be shared equally between petitioner and Mr. Gars. This arrangement was simply the manner in which the parties chose to administer the assets held in the investment partnership after they dissolved their law partnership, and cannot operate to change the character of amounts received under the profits interest.↩
21. Section 1222(3) provides: Long Term Capital gains.↩ - The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income. 22. We note that petitioner himself recognizes that his receipt of his share of the profits did not result from the sale of exchange of the profits interest. At trial, the Court asked petitioner "* * * what did you sell that's in issue here?" Petitioner responded "Nothing. There's nothing that I sold is [sic] in issue here * * *."↩
23. Even if we were to assume that the November 16, 1972 Agreement should be treated as an exchange of profits interest by petitioner, this result would not affect our final conclusion. Assuming that petitioner did have a "contested" 7-1/2 percent profits interest, it is clear from our previous analysis that such an interest was acquired as compensation for services. Thus, when proceeds attributable to it are received, they must be taxed as ordinary income. The exchange for a 5 percent profits interest could only affect this treatment if petitioner recognized as ordinary income at the time of the exchange an amount equal to the value of the interest received. Petitioner has not shown that he either included an amount in income in 1972 nor that the 5 percent profits interest had an ascertainable value in 1972. Accordingly, the ordinary income character of the original profits interest continued until the occurrence of a triggering event quantifying it and requiring the recognition of income.↩